**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SPINEDEX PHYSICAL THERAPY USA
INCORPORATED; CLAUDE ARAGON;
JACK ADAMS; THE ARIZONA
CHIROPRACTIC SOCIETY,
*Plaintiffs-Appellants*,

v.

UNITED HEALTHCARE OF ARIZONA,
INC.; UNITED HEALTHCARE, INC.;
UNITED HEALTHCARE INSURANCE
COMPANY; UNITED HEALTHCARE
SERVICES, INC.; INGENIX, INC.;
UNITED HEALTH GROUP, INC.;
DEFENDANTS 5 & DINER FRANCHISE
CORPORATION GROUP HEALTH
PLAN; ABBOTT LABORATORIES
GROUP HEALTH PLAN; ACOUSTIC
TECHNOLOGIES, INC. GROUP
HEALTH PLAN; ADOBE DRYWALL,
INC. GROUP HEALTH PLAN; ADP
TOTALSOURCE, INC. GROUP HEALTH
PLAN; AFFILIATED CARDIOLOGISTS
OF ARIZONA, P.C. GROUP HEALTH
PLAN; ART IN METAL U.S.A. GROUP
HEALTH PLAN; CAR-GRAPH, INC.
GROUP HEALTH PLAN; CITIGROUP,
INC. GROUP HEALTH PLAN;
DISCOUNT TIRE CO., INC. GROUP

No. 12-17604

D.C. No.
2:08-cv-00457-
ROS

OPINION

HEALTH PLAN; DOWNTOWN TEMPE COMMUNITY, INC. GROUP HEALTH PLAN; FAXWATCH, INC. GROUP HEALTH PLAN; GENERAL MOTORS CORPORATION GROUP HEALTH PLAN; GENUINE PARTS COMPANY GROUP HEALTH PLAN; HOME DEPOT USA, INC. MEDICAL AND DENTAL PLAN; INSIGHT ENTERPRISES, INC. GROUP HEALTH PLAN; ITC MANUFACTURING AND POWDER COATING GROUP HEALTH PLAN; THE MARTZ AGENCY GROUP HEALTH PLAN; METLIFE SECURITIES, INC. GROUP HEALTH PLAN; OLDCASTLE GLASS, INC. GROUP HEALTH PLAN; PINNACLE ENGINEERING, INC. GROUP HEALTH PLAN; PFIZER, INC. GROUP HEALTH PLAN; THE PROCTER & GAMBLE COMPANY GROUP; QUALEX INC. GROUP HEALTH PLAN; QWEST COMMUNICATIONS INTERNATIONAL INC. GROUP HEALTH PLAN, (United Group No. 0197313); QWEST COMMUNICATIONS INTERNATIONAL INC. GROUP HEALTH PLAN, (United Group No. 0229050); REVLON CONSUMER PRODUCTS CORPORATION GROUP HEALTH PLAN; RICHARD A. BIETZ, D.D.S., P.C. GROUP HEALTH PLAN; SHAMROCK FOODS COMPANY GROUP HEALTH PLAN; SHASTA

INDUSTRIES, INC. GROUP HEALTH
PLAN; SUMCO USA CORPORATION
GROUP HEALTH PLAN; TEMCON
CONCRETE CONSTRUCTION
COMPANY GROUP HEALTH PLAN;
URS CORPORATION GROUP HEALTH
PLAN; WATSON WILLIAMS FREIGHT
AGENCY, INC. GROUP HEALTH PLAN;
WELLS FARGO & COMPANY GROUP
HEALTH PLAN; AMERICA WEST
HOLDINGS CORPORATION GROUP
HEALTH PLAN; AMERICAN EXPRESS
COMPANY GROUP HEALTH PLAN;
AT&T CORPORATION GROUP
HEALTH PLAN; DELTA AIRLINES,
INC. GROUP HEALTH PLAN; HASBRO,
INC. GROUP HEALTH PLAN;
HONEYWELL INTERNATIONAL, INC.,
GROUP HEALTH PLAN;
INTERNATIONAL BUSINESS MACHINE
CORPORATION GROUP HEALTH
PLAN; IRIDIUM SATELLITE, LLC
GROUP HEALTH PLAN; LUCENT
TECHNOLOGIES INC. GROUP HEALTH
PLAN; SOUTHWEST AIRLINES
COMPANY GROUP HEALTH PLAN,
                    *Defendants-Appellees*.

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Senior District Judge, Presiding

Argued and Submitted
April 7, 2014—San Francisco, California

Filed November 5, 2014

Before: Barry G. Silverman, William A. Fletcher,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### ERISA

The panel reversed in part, affirmed in part, and vacated in part the district court's summary judgment in a healthcare provider's action, as assignee and would-be assignee of health plan beneficiaries, seeking payment of denied benefit claims under the Employee Retirement Income Security Act.

The panel held that the healthcare provider, Spinedex Physical Therapy USA, Inc., had Article III standing as assignee of plan beneficiaries to bring claims for payment of benefits against defendant health plans and their claims administrator and insurer. The panel held that Spinedex was not assigned the right to bring claims for breach of fiduciary duty. The panel held that plaintiff Arizona Chiropractic Society, a non-profit association of chiropractors, lacked

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

associational standing to bring suit against the claims administrator.

The panel held that an individual plan beneficiary's claim for breach of fiduciary duty was time-barred. The panel held that Spinedex's claims as assignee of beneficiaries under the Martz Agency Plan and the Acoustic Technologies Plan were not time-barred.

The panel held that the anti-assignment provision of the Discount Tire Plan precluded assignment by Plan beneficiaries to Spinedex.

The panel vacated in part and reversed in part the district court's holdings that another individual beneficiary's claim for breach of fiduciary duty was not exhausted, that the claims administrator was not a proper defendant for benefit claims under the American Express Plan, and that some of the claims assigned to Spinedex were not administratively exhausted. The panel remanded the case to the district court.

---

### COUNSEL

Joseph Creitz (argued), Joseph A. Creitz Law Offices, San Francisco, California; Joseph A. Garofolo, Garofolo Law Group, P.C., San Francisco, California, for Plaintiffs-Appellants.

Nicholas James Pappas (argued) and Jared R. Friedmann, Reed Lawrence Collins, Weil Gotshal & Manges LLP, New York, New York; John Clifton West, Brownstein Hyatt Farber Schreck, LLP, Phoenix, Arizona, for Defendants-Appellees.

Marcia Elizabeth Bove (argued), United States Department of Labor, Washington, D.C., for Amicus Curiae Secretary of Labor.

---

## OPINION

W. FLETCHER, Circuit Judge:

Defendant United Healthcare ("United") is the claims administrator for as many as forty-four defendant health plans (the "Plans"; collectively with United, "Defendants"). For most but not all of the Plans, United insures plan benefits. All of the Plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

As assignee and would-be assignee of Plan beneficiaries, health care provider Spinedex filed suit against United and the Plans seeking payment of denied benefit claims. The Arizona Chiropractic Society ("ACS"), as well as individual Plan beneficiaries Jack Adams and Claude Aragon, joined the suit as plaintiffs in an amended complaint. The amended complaint alleged improper denials of benefits as well as breaches of fiduciary duty.

The district court granted summary judgment to all defendants, holding, *inter alia*, that Spinedex lacked Article III standing to bring claims as an assignee. We reverse in part, affirm in part, vacate in part, and remand. We hold that Spinedex had Article III standing as assignee of Plan beneficiaries to bring claims for payment of benefits. We hold, further, (1) that Spinedex was not assigned the right to bring claims for breach of fiduciary duty; (2) that ACS does not have associational standing to bring suit against United;

(3) that Adams' claim for breach of fiduciary duty is time-barred; (4) that Spindex's claims as assignee of beneficiaries under the Martz Agency Plan and the Acoustic Technologies Plan are not time-barred; and (5) that the anti-assignment provision of the Discount Tire Plan precluded assignment by Plan beneficiaries to Spinedex. Finally, we vacate or reverse, and remand for further proceedings, the district court's holdings that Aragon's claim for breach of fiduciary duty was not exhausted, that United is not a proper defendant for benefit claims under the American Express Plan, and that some of the claims assigned to Spinedex were not administratively exhausted.

## I. Background

United serves as claims administrator for Plans named as defendants in this suit. United's role includes processing claims for benefits, interpreting and applying plan provisions, reviewing appeals, and issuing payments in accordance with the terms of the Plans. For most but not all of the Plans, United insures the benefits.

During the period relevant to this suit, Spinedex was a physical therapy clinic whose patients included Plan beneficiaries. Spinedex's patients signed several documents in connection with their treatment: a new patient form (the "Enrollment Form"); a form consenting to Spinedex's billing policies (the "Financial Policy"); an assignment of benefits form (the "Assignment"); and an "Authorization of Representation" form (the "Authorization"). The Enrollment Form allowed patients to provide their contact information and medical history. It also included a statement in which patients acknowledged that they were liable for all costs of the services rendered. The Financial Policy disclosed

Spinedex's fees and practices relating to insurance coverage and the submission of claims. It provided that patients would be responsible for any treatment costs not covered by their health insurance plan. The Assignment assigned to Spinedex its patients' "rights and benefits" under their respective Plans. The Authorization stated that Spinedex was authorized to represent patients in administrative or civil proceedings that might be necessary to pursue payment of benefits under their health insurance plans.

The Plans paid benefits differently depending on whether or not a health care provider was part of United's network. For health care services rendered by network providers, the Plans made payments directly to those providers. For health care services not rendered by network providers, Plan beneficiaries were required to seek payment from their respective Plans. A typical Plan provision states, "When you receive Covered Health Services from a non-Network provider, you are responsible for requesting payment from us." Almost all of the Plans allowed written assignment of claims for services rendered by non-network providers, without requiring the consent of the Plans for such assignment. A typical Plan provision states, "If a Subscriber [*i.e.*, a Plan beneficiary] provides written authorization to allow this, all or a portion of any Eligible Expenses due to a provider may be paid directly to the provider instead of being paid to the Subscriber."

After treating patients covered by defendant Plans, Spinedex submitted claims to United. United paid some claims, but denied others in whole or in part. Although Spinedex's Enrollment Form and Financial Policy both stated that patients were responsible to Spinedex for unpaid balances, Spinedex did not seek payment from its patients.

In March 2008, Spinedex filed a complaint under 29 U.S.C. § 1132(a), seeking payment of the denied claims. In July 2008, plaintiffs, including Spinedex, ACS, Adams, and Aragon, filed a Second Amended Complaint. The complaint alleged, *inter alia*, improper denials of benefits by United and the Plans, and breaches of fiduciary duty by United.

The district court granted summary judgment to Defendants. This appeal followed.

## II. Standard of Review

We review de novo a district court's grant of summary judgment. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). We review de novo a district court's Article III standing determination. *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 654 (9th Cir. 2011). We review de novo a dismissal on statute of limitations grounds. *Donoghue v. Orange Cnty.*, 848 F.2d 926, 929 (9th Cir. 1987). "Because the potential applicability vel non of exhaustion principles is a question of law, we consider it de novo." *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995).

## III. Discussion

### A. Spindex's Standing to Bring Claims for Payment of Benefits

The district court held that Spinedex, as an assignee of its patients' claims for payment of benefits, does not have Article III standing to bring those claims. We disagree.

"ERISA provides for a federal cause of action for civil claims aimed at enforcing the provisions of an ERISA plan." *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1247 (9th Cir. 2000) (citing 29 U.S.C. § 1132(e)(1)).  To have standing to state a claim under ERISA, "a plaintiff must fall within one of ERISA's nine specific civil enforcement provisions, each of which details who may bring suit and what remedies are available."    *Id.* (citing 29 U.S.C. §§ 1132(a)(1)–(9)). ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), identifies only plan participants, beneficiaries, fiduciaries, and the Secretary of Labor as "[p]ersons empowered to bring a civil action."  *See Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1378 (9th Cir. 1986).  As a non-participant health care provider, Spinedex cannot bring claims for benefits on its own behalf.  It must do so derivatively, relying on its patients' assignments of their benefits claims.  *See id.* at 1377–79; *see also Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983).

Defendants do not dispute that Spinedex patients would have had standing under ERISA and Article III to bring suit on their own behalf under the Plans of which they are beneficiaries.  Nor do they dispute that Plan beneficiaries have a right under ERISA to assign their claims for payment of benefits.  Nor, finally, do they dispute that the terms of most of the Plans explicitly allow beneficiaries to assign their claims for payment of benefits to non-network providers that have rendered health care services.  But Defendants seek to avoid the consequence of the foregoing by contending that Spinedex, despite its status as assignee, lacks Article III standing to bring suit for payment of benefits.

The three elements of Article III standing are familiar:

> [A] plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Defendants point out that Spinedex has not sought payment from its patients for claims, or portions thereof, that United and the Plans have refused to pay. Defendants argue that because Spinedex has not sought payment from its assigning patients for any shortfall, those patients do not have the "injury in fact" necessary for Article III standing. Defendants argue that since Spinedex stands in the shoes of, and can have no greater injury than, its assignors, Spinedex has not suffered injury in fact.

We are aware of no circuit court that has accepted defendants' argument. In the one circuit case directly on point, *HCA Health Services of Georgia, Inc. v. Employers Health Insurance Co.*, 240 F.3d 982 (11th Cir. 2001), the Eleventh Circuit squarely rejected the argument. Employers Health Insurance ("EHI") claimed that HCA lacked Article III standing because it had never billed its patient-assignor for the amount EHI refused to pay. EHI argued that because the patient was not harmed by its refusal to pay, he lacked Article III standing to bring this action himself and that, as a result, assignee HCA also lacked Article III standing. *Id.* at 991. The Eleventh Circuit rejected this argument, holding that "as

a provider-assignee, [HCA] ha[d] standing to sue for the recovery of benefits." *Id*.; *see also Pac. Shores Hosp. v. United Behavioral Health*, No. 12-55210, 2014 WL 4086784 (9th Cir. Aug. 20, 2014); *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002); *I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Trust Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998) (collecting cases).

The Supreme Court case most directly on point is *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008), in which payphone operators were owed money by long-distance carriers. The amounts of money owed were small, and payphone operators found it useful to assign unpaid claims to "aggregators." *Id.* at 271. In return for a fee, the aggregators agreed to pursue the payphone operators' claims against the carriers, by filing suit if necessary. The aggregators agreed to remit the proceeds of the suits (minus their fee) to the payphone operators. At issue in *Sprint Communications* were claims by a group of aggregators who had taken assignments from about 1,400 payphone operators and who had brought suit against AT&T, Sprint, and other carriers. AT&T moved to dismiss, arguing that the aggregators had no standing under Article III. The centerpiece of AT&T's argument was that because the aggregators were assignees for the sole purpose of collection, with no interest in the proceeds of the suits beyond the collection of their fee, they had insufficient interest to support Article III standing.

Based on an extensive historical analysis of the history of assignments, the Court concluded that the aggregators had standing. It wrote:

> [H]istory and precedent are clear on the question before us:  Assignees of a claim, including assignees for collection, have long been permitted to bring suit.    A clear historical answer at least demands reasons for change.  We can find no such reasons here, and accordingly we conclude that the aggregators have standing.

*Id.* at 275.   Even apart from the historical pedigree of assignees, the Court concluded that the aggregators had standing under modern Article III doctrine.  It wrote:

> Petitioners argue . . . that the aggregators have not themselves suffered any injury in fact and that the assignments for collection "do not suffice to transfer the payphone operators' injuries."  It is, of course, true that the aggregators did not originally suffer any injury caused by the long-distance carriers; the payphone operators did.  But the payphone operators assigned their claims to the aggregators lock, stock, and barrel.   And within the past decade we have expressly held that an assignee can sue based on his assignor's injuries.  In *Vermont Agency* [*of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000)], we considered whether a *qui tam* relator possesses Article III standing to bring suit under the False Claims Act, which authorizes a private party to bring suit to remedy an injury (fraud) that the United States, not the private party, suffered. . . . [I]n *Vermont Agency* we stated

> quite unequivocally that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor."

*Id.* at 286 (citations omitted).  The Court pointed out that federal courts routinely entertain suits in which the plaintiffs do not themselves obtain benefits—for example, trustees bringing suit on behalf of their trusts; guardians ad litem bringing suit on behalf of their wards; assignees in bankruptcy bringing suit to benefit bankrupt estates; and executors bringing suits to benefit testator estates.  *Id.* at 287–88.

Chief Justice Roberts, writing for himself and three others, dissented.  He contended that the aggregators had no Article III standing because they were paid a flat fee and had no stake in any recovery obtained from the carriers.  He wrote:

> [R]espondents are authorized to bring suit on behalf of the payphone operators, but they have no claim to the recovery.  Indeed, their take is not tied to the recovery in any way.  [Respondents' compensation is] not based on the measure of damages ultimately awarded by a court or paid by petitioners as part of a settlement.  Respondents received the assignments only as a result of their willingness to assume the obligation of remitting any recovery to the assignors, the payphone operators.

*Id.* at 300–01 (Roberts, C.J., dissenting).

*Sprint Communications* was a difficult case (to the degree that a five-four split is an indication of difficulty) because the aggregators had no stake in the outcome of the suits beyond their fee. That is, the aggregators were not assigned an interest in the claims; rather, they were assigned the claims for the sole purpose of collection, and were obligated to remit the entire proceeds (minus a fee) to the assignors. The difficulty presented by *Sprint Communications* does not exist in the case before us. Precisely the interest that the dissenters found lacking in *Sprint Communications* is present here. Spinedex's patients assigned the entirety of their claims against the Plans, and Spinedex, as assignee, is permitted to keep all amounts recovered in suits brought on those claims. The fact that Spinedex has chosen not to seek payment from its assignors, despite its contractual right to do so, does not mean that Spinedex had no right to recover benefits under the Plans from Defendants. It means only that Spinedex has decided not to pursue its legal rights against its assignors.

The flaw in Defendants' argument is that they would treat as determinative Spinedex's patients' injury in fact as it existed after they assigned their rights to Spinedex. We agree with Defendants that Spinedex has not sought to recover from its patients any shortfall in Spinedex's recovery from the Plans, and that the patients have not suffered injury in fact after assigning their claims. But the patients' injury in fact *after* the assignment is irrelevant. As assignee, Spinedex took from its assignors what they had *at the time of* the assignment. At the time of the assignment, Plan beneficiaries had the legal right to seek payment directly from the Plans for charges by non-network health care providers. If the beneficiaries had sought payment directly from their Plans for treatment provided by Spinedex, and if payment had been refused, they would have had an unquestioned right to bring

suit for benefits. No one, including Defendants in this suit, would contend that the beneficiaries would have lacked Article III standing in that circumstance. However, instead of bringing suit on their own behalf, plaintiffs assigned their claims to Spinedex.

Under *Vermont Agency*, it is black-letter law that an assignee has the same injury as its assignor for purposes of Article III. As the Court wrote in *Sprint Communications*, "[I]n *Vermont Agency* we stated quite unequivocally that 'the assignee of a claim has standing to assert the injury in fact suffered by the assignor.'" 554 U.S. at 286; *see also Misic*, 789 F.2d at 1378 n.4 ("[A]n assignment cannot create rights in the assignee not held by the assignor. . . . [Rather,] the assignee stands in the shoes of the assignor, and, if the assignment is valid, has standing to assert whatever rights the assignor possessed."). Defendants themselves concede that assignee Spinedex stands in the shoes of its assignors. At the time of the assignment, the Plan beneficiaries had Article III standing. Therefore, as assignee, Spinedex also has Article III standing.

In addition to holding that Spinedex lacked Article III standing, the district court issued alternative holdings on a number of issues relevant to Spinedex's ability to bring suit. We address those holdings as necessary in the following sections.

B. Spinedex's Claims for Breach of Fiduciary Duty

The district court held that Spinedex's patients did not assign their rights to Spinedex to bring claims for breach of fiduciary duty. We agree.

The Assignments signed by Plan beneficiaries assigned to Spinedex the right to seek payment of claims directly from their Plans.  In relevant part, the Assignments provided that the Plans would make payments directly to Spinedex for services rendered.  Any such payments would be considered

> payment toward the total charges for the professional services rendered.  THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY. This payment, will not exceed my indebtedness to the above mentioned assignee, and I have agreed to pay, in a current manner, any balance of said professional service charges over and above this insurance payment.

(Capitalization in the original.)

Spinedex's argument that the patients assigned their right to sue for breach of fiduciary duty depends on the meaning of the word "rights" in the capitalized sentence.  Spinedex argues that the word "benefits" refers to payments to non-network providers for services rendered.  It argues, further, that "rights" and "benefits" have different meanings, and that the word "rights" cannot refer to benefits.  "Rights" must instead refer to rights to bring claims for breach of fiduciary duty.

Spinedex's argument is divorced from context.  The entire focus of the Assignment is payment for medical services provided by Spinedex.  The Assignment nowhere indicates that, by executing the assignment, patients were assigning to Spinedex rights to bring claims for breach of fiduciary duty.

*See Britton v. Co-op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) ("[I]t is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person . . . ." (quoting *Restatement (Second) of Contracts* § 324 (1981))). To the contrary, the entirety of the Assignment indicates that patients intended to assign to Spinedex only their rights to bring suit for payment of benefits. *See id.* (noting that the purported assignment document did not contain language that could be considered an effective assignment of the rights at issue and stating that instead, "the plain language of the contract indicate[d] that the parties had just the opposite intent"). Because Spinedex was assigned only the right to bring claims for payment of benefits, Spinedex has no right to bring claims for breach of fiduciary duty.

### C.  Standing of Arizona Chiropractic Society

The district court held that the Arizona Chiropractic Society ("ACS") does not have associational standing to bring suit. We agree.

ACS is a non-profit association of chiropractors. It contends that Defendants have improperly refused to pay for "decompression therapy" and other specified therapies, or have paid for such therapies at an improperly low rate. It seeks declaratory and injunctive relief on behalf of its members against such allegedly improper practices.

Associational standing has three requirements.

> [A]n association has standing to bring suit on behalf of its members when:  (a) its members would otherwise have standing to sue in their

> own right; (b) the interests it seeks to protect
> are germane to the organization's purpose;
> and (c) neither the claim asserted nor the
> relief requested requires the participation of
> individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Because ACS cannot satisfy the third requirement, it does not have standing to seek prospective relief on behalf of its members.

Under the third requirement, an association has standing only to seek relief that would not require the participation of its individual members.  *See Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987); *see also Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002) (holding that an industry group has associational standing where it is pursuing only injunctive and declaratory relief and "the heart of its complaint involves systemic policy violations that will make extensive individual participation unnecessary").  The relief ACS seeks in the Second Amended Complaint would require the participation of its individual members.  The complaint alleges that in some cases payment was wrongfully withheld altogether, and other cases wrongfully withheld only in part.  Further, the complaint refers to a number of different therapies, not limited to "decompression therapy," for which payment has been allegedly wrongfully withheld or limited.  Finally, the complaint alleges that "ACS's members and their patients have suffered actual injury as a result of the violations of ERISA herein alleged."  The complaint thus alleges variations in payments wrongfully withheld, in the treatments for which payment has been withheld, and in the individual situations of ACS members.  Because of these

multiple variations, specific to individual members of ACS, we conclude that the violations of which ACS complains are not susceptible to judicial treatment as "systematic policy violations that . . . make extensive individual participation unnecessary." *Pa. Psychiatric Soc'y*, 280 F.3d at 286.

## D.  Claims of Adams and Aragon

The district court dismissed the claims of plaintiffs Jack Adams and Claude Aragon as barred by the statute of limitations and by their failure to exhaust.  We agree with respect to Adams, and affirm.  But we vacate the district court's dismissal of Aragon's claim and remand for further proceedings.

Adams and Aragon are beneficiaries, respectively, of the International Business Machines Plan and the Qwest Communications International Plan.  Adams and Aragon allege that they were "improperly denied benefits in violation of ERISA and the terms of [their] Plan[s]."  Adams was treated by Spinedex between December 2001 and February 2002.  Aragon was treated by Spinedex between May and August 2005.  Spinedex submitted claims for payment, which were denied.

Adams and Aragon, like other Spinedex patients, assigned to Spinedex the right to seek payment of benefits directly from their Plans.  Because Adams and Aragon assigned their right to seek payment from their Plans, they may not themselves seek payment of those claims.  *See Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 307 n.5 (3d Cir. 2008) ("[I]f there is a valid assignment, the hospital becomes the only claimant because the original claimant gives up her claim by the assignment." (citing *Principal Mut. Life Ins. Co.*

*v. Charter Barclay Hosp., Inc.*, 81 F.3d 53, 55–56 (7th Cir. 1996))).

However, neither Adams nor Aragon assigned their claims for breach of fiduciary duty. The district court denied both of their claims, on the grounds that Adams' claim was time-barred and that Aragon had not exhausted his administrative appeals. We agree with respect to Adams. Adams' claim is time-barred because he was on notice in December 2004, at the latest, of the facts giving rise to his claim. The statute of limitations is three years, and Adams did not file suit until 2008.

The district court denied Aragon's claim on the ground that he had not exhausted his administrative appeals. However, as a general rule, exhaustion is not required for statutory claims like Aragon's. *See Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 n.1 (9th Cir. 1991). Defendants argue that exhaustion is required because Aragon's statutory claim is no more than a "disguised" benefit claim. *See Diaz*, 50 F.3d at 1484 (rejecting the argument that an ERISA claimant can "attach a 'statutory violation' sticker to his or her [denial of benefits] claim and then . . . use that label as an asserted justification" for failure to exhaust). But that is not so. As the district court found, United's alleged statutory violations were "willful and systematic, as contemplated in *Massachusetts Mutual* [*Insurance Co. v. Russell*, 473 U.S. 134 (1985)]," and Aragon's complaint sought injunctive relief that "clearly will benefit the Plans." Aragon's statutory claim thus is not a "disguised" claim for benefits, and he need not have exhausted. We therefore reverse the district court's dismissal of Aragon's claim for breach of fiduciary duty.

The district court did not consider whether, in the case's current procedural posture, Aragon has Article III standing. That is, it did not consider whether Aragon would have standing to bring a claim for breach of fiduciary duty if he cannot pursue his claim for denial of benefits because he has assigned it to Spinedex. *Cf. Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) ("There is no redressability, and thus no standing, where (as is the case here) any prospective benefits depend on an independent actor who retains 'broad and legitimate discretion the courts cannot presume either to control or to predict.'" (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989))). We therefore remand Aragon's case to the district court to consider that question in the first instance.

E.  Spinedex's Claims Against the Martz Agency Plan and
the Acoustic Technologies Plan

The district court held that claims assigned to Spinedex by beneficiaries of the Martz Agency Plan and the Acoustic Technologies Plan are time-barred by limitations periods contained in the Plans. We disagree.

The summary plan descriptions ("SPDs") for both Plans contain two-year limitations periods for claims of benefits. There is no question that Spinedex's action was filed after the expiration of the two-year period. However, we hold that because the limitation periods were not properly disclosed in the SPDs, these provisions are unenforceable.

Because SPDs serve as "the employee's primary source of information regarding employment benefits," *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139,

1143 (9th Cir. 2002), they are subject to a number of statutory and regulatory requirements. In particular, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" must be clearly disclosed in the SPD. *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 904 (9th Cir. 2009) (internal quotation marks omitted) (quoting 29 U.S.C. § 1022(b)). A limitation of the time for bringing suit qualifies as a circumstance "which may result in disqualification, ineligibility, or denial or loss of benefits." *Id.* at 906 (internal quotation marks omitted) (quoting 29 U.S.C. § 1022(b)).

A Department of Labor regulation imposes specific requirements for the placement and format in an SPD of a provision falling under § 1022(b). The language of the regulation is clear, though a little convoluted: "The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted." 29 C.F.R. § 2520.102-2(b). That is, either (1) the description or summary of the restrictive provision must be placed "in close conjunction with the description or summary of benefits," or (2) the page on which the restrictive provision is described must be "noted" "adjacent to the benefit description." The SPDs for the Martz Agency and Acoustic Technologies Plans comply with neither requirement.

The two SPDs are almost identical. The Martz Agency Plan has 76 numbered pages; the Acoustic Technologies Plan has 77. Both have ten sections. Section 1 is entitled "What's Covered—Benefits." Section 2 is entitled "What's Not Covered—Exclusions." Sections 1 and 2 of the Martz

Agency Plan are on pages 3 through 36; they are on pages 3 through 38 of the Acoustic Technologies Plan. Section 9 of the Plans is entitled "General Legal Provisions." The SPDs for each Plan contain a provision, contained in Section 9, specifying a two-year limitations period for bringing legal action. The limitations provision is labeled "Limitation of Action," and it is the sixteenth of nineteen provisions. The fifteen earlier provisions in Section 9 are labeled "Your Relationship with Us," "Our Relationship with Providers and Participating Employers," "Your Relationship with Providers and Participating Employers," "Notice," "Statements by Participating Employer or Subscriber," "Incentives to Providers," "Incentives to You," "Interpretation of Benefits," "Administrative Services," "Amendments," "Clerical Error," "Information and Records," "Examination of Covered Persons," "Workers' Compensation not Affected," and "Refund of Overpayments." The provision is on page 66 of the Martz Agency Plan and page 69 of the Acoustic Technologies Plan.

In *Scharff*, we employed a "reasonable plan participant" standard in analyzing 29 C.F.R. § 2520.102-2(b). *Scharff*, 581 F.3d at 907. Because "[t]he one-year deadline for filing suit regarding disability claims was, logically, placed at the end of the disability chapter," we held in *Scharff* that the placement satisfied § 2520.102-2(b). *Id.* We noted that a "reasonable plan participant applying for *disability* benefits would be expected to read, in its entirety, the *Disability* chapter of the SPD, as it explains the rules relating to the benefits for which she is applying." *Id.* (emphasis in original).

This case is a far cry from *Scharff*. The "Limitation of Action" provision, buried deep in Section 9, is not in "close

conjunction" to benefits provisions, Sections 1 and 2. Nor is there any reference, adjacent to the benefits description, to the page number on which the "Limitation of Action" provision appears. Defendants contend that Section 8, entitled "When Coverage Ends," is a benefits provision within the meaning of the regulation. We disagree. But even if Section 8 were a benefits provision, the limitation provision contained in Section 9, coming after fifteen unrelated provisions in that section, is hardly "in close conjunction" with Section 8.

If we were to hold that the placement of the limitation provision in Section 9 satisfies *Scharff*'s "reasonable plan participant" standard under § 2520.102-2(b), we would, in effect, require a plan beneficiary to read every provision of an SPD in order to ensure that he or she did not miss a limitation provision. Such a requirement is what the regulation is specifically designed to avoid. We therefore conclude that limitations periods in the SPDs for the Martz Agency and Acoustic Technologies Plans were not disclosed in compliance with 29 C.F.R. § 2520.102-2(b). Because they were not so disclosed, they are unenforceable.

F. Anti-Assignment Provision in the Discount Tire Plan

The district court held that an anti-assignment provision in the Discount Tire Plan prevented Spinedex's patients from assigning claims under that Plan. We agree.

Anti-assignment clauses in ERISA plans are valid and enforceable. *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991). It is uncontested that the Discount Tire Plan contains an anti-assignment provision. However, Plaintiffs argue that United (1) consented to the assignments by sending Explanation of Benefits ("EOB")

letters indicating that certain payments had been assigned to Spinedex, and (2) waived any right to enforce the anti-assignment provision by failing to raise it during the first-level administrative appeals process. We disagree with both arguments. We address them in turn.

First, the SPD for the Discount Tire Plan provides, "You may not assign your Benefits under the Plan to a non-Network provider without *our* consent. *The Claims Administrator* may, however, in their discretion, pay a non-Network provider directly for services rendered to you." (Emphasis added.) The word "our," as used in the Plan, is defined in the Introduction to the SPD: "When we use the words 'we,' 'us,' and 'our' in this document, we are referring to the Plan Sponsor." The employer, Discount Tire Company, is the Plan Sponsor.

Acting as claims administrator, United sent EOB letters to Discount Tire Plan beneficiaries stating "PAYMENT ASSIGNED TO PROVIDER." We construe United's statement as an exercise of its discretionary authority. Under the explicit terms of the Plan, United had the discretionary authority only to send payments directly to non-network providers. United did not have authority to consent to assignment of benefits; only the Plan Sponsor had that authority. There is no evidence in the record that the Discount Tire Company consented to any assignment.

Second, we wrote in *Harlick v. Blue Shield of California*:

> A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is

> challenged in federal court . . . .  The general
> rule, . . . in this circuit and in others, is that a
> court will not allow an ERISA plan
> administrator to assert a reason for denial of
> benefits that it had not given during the
> administrative process.

686 F.3d 699, 719–20 (9th Cir. 2012).    That is, an
administrator may not hold in reserve a known or reasonably
knowable reason for denying a claim, and give that reason for
the first time when the claimant challenges a benefits denial
in court.    But in the case before us, Defendants did not
improperly assert a new reason in the district court.    In
*Hermann Hospital v. MEBA Medical & Benefits Plan*, the
Fifth Circuit rejected a plan's argument that "there was never
a reason to assert the non-assignment clause until [the
provider] formally claimed an assignment in its lawsuit."
959 F.2d 569, 574 (5th Cir. 1992), *overruled on other
grounds by Access Mediquip, LLC v. UnitedHealthcare Ins.
Co.*, 698 F.3d 229 (5th Cir. 2012) (en banc).    The court held
that the plan was "estopped to assert the anti-assignment
clause . . . because of its protracted failure to assert the clause
when [the provider] requested payment pursuant to a clear
and unambiguous assignment."  *Id.* at 575; *see also Harlick*,
686 F.3d at 720 ("ERISA and its implementing regulations
are undermined where plan administrators have available
sufficient information to assert a basis for denial of benefits,
but choose to hold that basis in reserve rather than
communicate it to the beneficiary." (internal quotation marks
and citations omitted)).

    Unlike in *Hermann*, there is no evidence that United was
aware, or should have been aware, during the administrative
process that Spinedex was acting as its patients' assignee.  So

far as United knew, Spinedex was acting merely as an authorized representative charged with filing, collecting, or appealing a claim on behalf of the patient. Defendants therefore did not waive their objection to the assignment in the district court when it became clear, for the first time, that Spinedex was claiming as an assignee.

## G. United as a Proper Defendant

The district court held that United was not a proper defendant for claims brought under the American Express and Discount Tire Plans. (The proper-defendant issue is relevant only to claims brought under the American Express Plan because, as we held above, the anti-assignment provision of the Discount Tire Plan prevented assignment to Spinedex.) We are unable to determine with certainty a proper basis to affirm or reverse the district court's holding.

Spinedex contends, under our analysis in *Cyr v. Reliance Standard Life Insurance Co.*, 642 F.3d 1202 (9th Cir. 2011) (en banc), that United is a proper defendant. Cyr had sued Reliance Standard Life, which was the plan insurer, but was neither the plan nor an administrator of the plan. We overruled previous decisions in which we had held "that only a benefit plan itself or the plan administrator of a benefit plan covered under ERISA is a proper defendant" in a suit for benefits under 29 U.S.C. § 1132(a)(1)(B). *Id.* at 1203–04. We noted that the text of § 1132(a)(1)(B) does not limit the classes of defendants that may be sued, and we held that suit may successfully be brought against a defendant under this section "as long as that party's individual liability is established." *Id.* at 1207. We concluded that because Reliance was a plan insurer, responsible for paying legitimate benefits claims, it was "a logical defendant for an action by

Cyr to recover benefits due to her under the terms of the plan and to enforce her rights under the terms of the plan." *Id.*

As the district court noted, the reach of *Cyr* was left unclear in our opinion. But we read it to hold that proper defendants under § 1132(a)(1)(B) for improper denial of benefits at least include ERISA plans, formally designated plan administrators, insurers or other entities responsible for payment of benefits, and de facto plan administrators that improperly deny or cause improper denial of benefits. Suits under § 1132(a)(1)(B) to recover benefits may be brought "against the plan as an entity *and against the fiduciary of the plan*." *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1194 (8th Cir. 1998) (emphasis added) (collecting cases). A fiduciary is any entity that "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . [or] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); *see LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844–45 (5th Cir. 2013) (holding that a third-party administrator that neither was designated as the plan administrator nor was responsible for paying claims was nonetheless a proper defendant based on the control it exercised over benefits claims processing).

With the appeal in its current posture, we cannot be certain of the status of United. Unlike most of the defendant Plans, the American Express Plan is self-insured. It is thus clear that United is not, based on a responsibility to pay benefits, a proper defendant under *Cyr*. But it is not clear whether United is a formally designated or de facto administrator. The district court held that United is not an

administrator of the American Express Plan.  It wrote that "the American Express Plan does not designate a plan administrator, meaning the plan administrator is the 'sponsor' identified as the Employee Benefits Administrator Committee of American Express."  But in their brief to us, Defendants state without qualification, "United was a claims administrator for each of the 44 Plans named as defendants."

We are unable to reconcile the district court's holding with Defendants' apparent concession.  We therefore vacate the district court's holding that United is not a proper defendant for claims brought under the American Express Plan and remand for further proceedings on this issue.

## H.  Exhaustion of Administrative Remedies

Defendants argued in the district court that some claims were barred due to a failure to exhaust administrative remedies.  The district court ultimately dismissed on other grounds, the most important of which was its holding that Spinedex had no Article III standing to bring claims as the patients' assignee.  However, the district court concluded that "[e]ven if standing existed, many individuals did not exhaust their administrative remedies for their benefit denial claims." We vacate and remand on this issue.

"As a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011).  However, Plaintiffs argue that, because a number of patients' plans did not expressly require exhaustion, those claims should not now be barred for failure to exhaust.  Plaintiffs further argue that even where the plans require exhaustion of administrative

remedies, the claims should be "deemed" exhausted as a result of United's failure to follow appropriate claims procedures.

"ERISA seeks to avoid saddling plaintiffs . . . with the burdens and procedural delays imposed by inartfully drafted plan terms." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 181 (2d Cir. 2013). Where plan documents could be fairly read as suggesting that exhaustion is not a mandatory prerequisite to bringing suit, claimants may be affirmatively misled by language that appears to make the exhaustion requirement permissive when in fact it is mandatory as a matter of law.

> [E]xempting from the general exhaustion requirement those plan participants who "reasonably interpret" their ERISA plan not to impose an exhaustion requirement will have the salutary effect of encouraging employers and plan administrators to clarify their plan terms and, thereby, of leading more employees to pursue their benefits claims through their plan's claims procedure in the first instance.

*Id.* at 180 (quoting *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1209 (11th Cir. 2003)).

Several of the Plans contain language which could reasonably be read as making optional the administrative appeals process. For example, the Temcon Concrete Plan says that "[i]n the interest of saving time and money, *you are encouraged* to complete all steps in the complaint process . . . before bringing any legal action against us." (Emphasis in

original.)   A number of our sister circuits have held that a claimant need not exhaust when the plan does not require it. *See, e.g.*, *Watts*, 316 F.3d at 1209–10 ("If a plan claimant reasonably interprets the relevant statements in the summary plan description as permitting her to file a lawsuit without exhausting her administrative remedies, and as a result she fails to exhaust those remedies, she is not barred by the court-made exhaustion requirement from pursuing her claim in court."); *Kirkendall*, 707 F.3d at 180.   We arguably adopted the same rule in *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384 (9th Cir. 1994), and we do so explicitly today.   In *Nelson*, we rejected a defendant's contention "that the plaintiffs were required to bring their valuation claims before the Administrative Committee prior to seeking relief from the courts," observing that "[n]othing in the Plan requires such action prior to instituting suit."  *Id.* at 1388.

Even where a plan expressly requires exhaustion of administrative remedies, 29 C.F.R. § 2560.503-1(l) provides that where a plan fails "to establish or follow claims procedures consistent with the requirements of this section," claimants are "deemed to have exhausted [their] administrative remedies."  *See Barboza*, 651 F.3d at 1076. The Secretary of Labor, appearing as amicus in this case, interprets 29 C.F.R. § 2560.503-1(l) as allowing exceptions for de minimis deviations in certain circumstances, but requiring "deemed exhaustion" for violations more serious than de minimis violations.  An agency's interpretation of its own ambiguous regulation is entitled to deference.  *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).   Because the Secretary's interpretation is not "plainly erroneous or inconsistent with the regulation," *id.*, we adopt it here.  Where United's failure to comply with claims procedures went

beyond mere de minimis violations, patients' claims must be deemed exhausted under 29 C.F.R. § 2560.503-1(l).

Because the district court held that Spinedex lacked Article III standing to bring claims as an assignee, it did not perform a claim-by-claim analysis of exhaustion. We therefore remand to the district court to make this determination in the first instance. On remand, for each claim for which failure to exhaust is at issue, the district court should determine whether: (1) the plan required exhaustion of administrative remedies; (2) the claim must be deemed exhausted due to United's noncompliance with the claims procedures; and (3) the claim was in fact exhausted.

## Conclusion

We hold that Spinedex had Article III standing to bring benefit claims against Defendants as assignee of its patients. Its injury in fact is the same injury its assignees had at the time of the assignment. Our other holdings are recited in the body of our opinion and need not be repeated here.

**REVERSED in part, AFFIRMED in part, VACATED in part, and REMANDED.** Each party shall bear its own costs on appeal.