In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――――――

Nos. 14-2322, 14-3174 & 15-1274

PENNSYLVANIA CHIROPRACTIC ASSOCIATION, MARK BARNARD, and BARRY A. WAHNER,

*Plaintiffs-Appellees,*

*v.*

INDEPENDENCE HOSPITAL INDEMNITY PLAN, INC., formerly known as Independence Blue Cross,

*Defendant-Appellant.*

―――――――――――

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 5619 — **Matthew F. Kennelly**, *Judge.*

―――――――――――

ARGUED SEPTEMBER 9, 2015 — DECIDED OCTOBER 1, 2015

―――――――――――

Before EASTERBROOK, KANNE, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Two chiropractors and an association of chiropractors filed this suit against an insurance company. They contend that, when determining how much to pay for services rendered to patients, the insurer failed to use the procedures required by 29 U.S.C. §1133, part of the

Employee Retirement Income Security Act (ERISA). Plaintiffs' ability to invoke ERISA depends on their being "beneficiaries" of a plan established under that law. See 29 U.S.C. §1132(a)(1)(B). Over the course of 19 opinions that aggregate more than 200 single-spaced pages, the district court concluded that plaintiffs are beneficiaries and awarded damages plus injunctions requiring the insurer to follow §1133 and the Department of Labor's regulation, 29 C.F.R. §2560.503–1, when making decisions about coverage and level of payment under insurance policies.

The insurer operates a preferred-provider system that offers patients better benefits, or lower co-payments, when they patronize medical providers who have agreed with the insurer to accept lower reimbursements (per procedure) in exchange for a better flow of business. The two chiropractor plaintiffs have signed such contracts, which the parties call "participating provider" or "network" agreements. Providers bill the insurer directly and do not know (or care) whether a given patient obtained the coverage as part of an ERISA welfare-benefit plan or through some other means, such as an affinity-group policy or an insurance exchange under the Affordable Care Act.

The current dispute concerns the amounts providers receive under their participating-provider contracts, not any particular ERISA plan. The insurer believes that its policies and contracts promise to reimburse particular services on a capitation basis (a health maintenance organization receives a fixed payment per patient per year, without regard to the amount of value of services rendered), while the plaintiffs believe that the insurer must use a fee-for-service system. If the insurance policy calls for capitation payment, providers

who are outside a HMO cannot receive payment for a particular class of services. After reimbursing some services on a fee-for-service basis, the insurer declared that it had made a mistake and recouped by reducing future payments for other services that the insurer acknowledged were compensable. Plaintiffs insist that it could not do this without offering hearings under §1133 and the implementing regulations, while the insurer says that the right procedures to use are those specified by contract.

In siding with the plaintiffs, the district court required the insurer to use procedures that are designed for retail-level disputes between a plan's participants and their employer (or plan administrator) rather than procedures designed for wholesale-level disputes between an insurer and providers under network contracts. If that is what ERISA requires, then a mismatch between the procedures and the kind of dispute involved is no concern of the judiciary's. But the insurer maintains that it is not what ERISA requires, because (in its view) plaintiffs are neither participants in nor beneficiaries of welfare-benefit plans.

Section 1133 requires "every employee benefit plan" to make available to each "participant" and "beneficiary" procedures that the Secretary of Labor may supplement by regulation. Section 1132(a)(1)(B) permits participants and beneficiaries to sue in federal court to enforce this duty. The parties dispute whether the plaintiffs have "standing" to litigate under §1132 and §1133. That's a misnomer. Standing means the combination of injury in fact, causation, and redressability. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). No one doubts that the plaintiffs have shown all three of these. The issue in this suit is not whether chiropractors

have standing but whether their claim comes within the zone of interests regulated by a specific statute. The Supreme Court stressed in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014), the importance of keeping standing distinct from statutory coverage. So we avoid the language of standing and ask instead whether plaintiffs are participants or beneficiaries as ERISA uses those words—both of which are defined terms.

Plaintiffs concede that they are not participants under the definition in 29 U.S.C. §1002(7). A participant is an employee or former employee who seeks a plan's benefits. But plaintiffs describe themselves as beneficiaries. That word is defined in §1002(8): "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." We held in *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698 (7th Cir. 1991), that when a "participant" assigns to a medical provider the right to receive the participant's entitlement under the plan, this makes the provider a "beneficiary" under §1002(8). Plaintiffs and the district court rely principally on *Kennedy* for the conclusion that they, too, are beneficiaries.

The problem with this contention all but catapults off the page: a "beneficiary" is a person designated "by a participant" or "by the terms of an employee benefit plan," and plaintiffs are neither. (The parties call these two possibilities "derivative standing" and "direct standing." We use the statutory language instead.) Plaintiffs do not rely on a valid assignment from any patient. Nor do they rely on a designation in a plan. Instead they rely on their contracts with an insurer. That does not meet the definition in §1002(8). No

employee's benefits are at issue and none had to pay an extra penny as a result of the insurer's treatment of some procedures as capitation based rather than fee-for-service based; plans' duties to their participants are unaffected by this litigation.

It became clear at oral argument that plaintiffs deem every insurer (perhaps every policy) to be a "plan." When asked why, their counsel replied that a big insurer is bound to implement *some* plan or other. An employer (defined in §1002(5)) establishes a plan; the plan's administrator (another defined term, see §1002(16)(A)) may contract for insurance to implement that plan; indeed, an employer may offer a particular policy of insurance *as* the plan. But this does not equate the insurer to the plan, for "welfare plan" is itself a defined term: "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of" providing medical or other fringe benefits. 29 U.S.C. §1002(1).

The defendant, which used to be known as Blue Cross of Greater Philadelphia but changed its name when it expanded its territory and services, is not "established" or "maintained" by any employer. It was established in 1938, long before ERISA, and exists independently of employers and their plans. It now covers more than seven million people, far more than any ERISA plan. That some employers' plans provide benefits through an insurer does not make the policy "the plan." And plaintiffs' contracts are with an insurer in its role as insurer, not any employer or plan sponsor; the network contracts cover all dealings with the insurer rather

than the administration of a particular plan. The insurer is the sole defendant; no participant, employer, plan sponsor, or plan administrator is a litigant. The district court's injunctions regulate the dealings between medical providers and a particular insurer, not between plaintiffs and plan sponsors. Plaintiffs' view that any document *related to* a plan is itself a plan was rejected by the Supreme Court in *CIGNA Corp. v. Amara*, 563 U.S. 421, 131 S. Ct. 1866, 1877–78 (2011).

The Second Circuit recently held that a network contract between a medical provider and an insurer does not make that provider a "beneficiary" under ERISA. See *Rojas v. CIGNA Health & Life Insurance Co.*, 793 F.3d 253 (2d Cir. 2015). Plaintiffs insist that *Rojas* contradicts this circuit's approach, established in *Kennedy*, but we have explained why *Kennedy* and similar opinions do not support plaintiffs' position. *Rojas* concludes that every circuit that has addressed the subject has distinguished between providers' status as assignees of particular claims to benefits and providers' status as voluntary members of a network established by an insurer. See 793 F.3d at 258, discussing *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014); *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, 1241 (11th Cir. 2001); and *Ward v. Alternative Health Delivery Systems, Inc.*, 261 F.3d 624, 627 (6th Cir. 2001). The language of those other decisions is not as clean as the Second Circuit's—and the Second Circuit's use of "standing" as a synonym for statutory coverage itself leaves something to be desired—but our review of the decisions in other circuits leads us to agree with *Rojas* that the distinction between assignment of particular claims and status as an in-network provider is supported by the case law. And, more to the point, it is supported by the language of ERISA.

Plaintiffs express concern that ERISA's preemption clause, 29 U.S.C. §1144(a), will disable them from enforcing procedural protections negotiated by contract. But state law regulating insurance is outside the scope of that clause. See 29 U.S.C. §1144(b)(2)(A); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002); *Fontaine v. Metropolitan Life Insurance Co.*, No. 14-1984 (7th Cir. Sept. 4, 2015). The state law of insurance contracts is a form of state law regulating insurance and is enforceable whether or not a given insurer sells its policy to employers. We need not distort the word "beneficiary" in order to enable medical providers to contract for and enforce procedural rules about how insurers pay for medical care.

Plaintiffs are not "beneficiaries" as ERISA uses that term, so they are not entitled to the procedures established by §1133 and the implementing regulations. They may have contract claims, but as the parties are not of completely diverse citizenship a federal court cannot adjudicate them. (Plaintiffs have not contended that contract issues could or should be resolved under the supplemental jurisdiction. See 28 U.S.C. §1367. Indeed, plaintiffs have not contended that the insurer broke any contractual promise.) The damages and injunctions therefore must be vacated, and the award of attorneys' fees to plaintiffs falls with them.

Reversed