977 F.Supp. 1422 (1997)
Gloria LOPEZ, Plaintiff,
v.
SAN LUIS VALLEY, BOARD OF COOPERATIVE EDUCATIONAL SERVICES, and Ricardo F. Espinoza, individually and in his official capacity as Special Education Assistant to the San Luis Valley BOCES, and Neil Henderson, individually and in his official capacity as Superintendent of the San Luis Valley BOCES, Defendants.
Civil Action No. 96-B-1558.
United States District Court, D. Colorado.
October 17, 1997.
*1423 Robin K. Auld, Pagosa Springs, CO, for Plaintiff.
Robert I. Cohen, Bruce Anderson, Shannon Way Roberts, Stettner, Miller and Cohn, P.C., Denver, CO, for Defendants.

MEMORANDUM OPINION & ORDER
BABCOCK, District Judge.
Plaintiff, Gloria Lopez, claims violations of Title IX, 20 U.S.C. § 1681 et seq., and 42 U.S.C. § 1983. Defendants move for summary judgment on both claims. The motion is adequately briefed, and oral argument would not aid me materially in deciding it. For the following reasons, I will grant, in part, and deny, in part, defendants' motion.

I.
The following facts are undisputed or, if disputed, are viewed in a light most favorable to plaintiff. In 1994, plaintiff was the principal of La Jara Elementary School and was an employee of the North Conejos School *1424 District of Colorado. Plaintiff's immediate supervisor was Kurt Cary, Superintendent of the North Conejos School District. Defendant Ricardo Espinoza worked at that time for defendant San Luis Valley, Board of Co-operative Educational Services (BOCES). Espinoza's immediate supervisor was defendant Neil Henderson, Superintendent of BOCES. It is undisputed that North Conejos School District and BOCES are different entities.
BOCES is a state governmental entity established by Colo.Rev.Stat. § 22-5-101. BOCES supplies various services, such as special education support, to fourteen member school districts, including North Conejos. BOCES was created to help less affluent school districts share the costs of special services, and each member school district contracts with BOCES for such services. Neither BOCES nor its staff has any legal authority over the North Conejos School District or its employees.
In November 1994, members of BOCES, including Espinoza, met with staff members at La Jara Elementary School to discuss the needs of "Student X," a member of Ms. Diana Hamilton's third grade class. Hamilton sought assistance from BOCES because Student X was disruptive and required inordinate attention in class. During the meeting, Espinoza became angry with Hamilton, accusing her of being the real problem. Plaintiff told Espinoza that he did not have permission to talk down to her staff and that if he was otherwise upset with Hamilton or her, the meeting was not the appropriate forum for his comments. Espinoza then turned quickly towards plaintiff, moving close to her, pointing his finger at her head, and stating angrily, "Don't you attack me Mrs. Lopez."
Lopez was shaken and frightened by the encounter and left the room momentarily before returning to complete the meeting. She later called Henderson to complain of Espinoza's actions. In addition, she confirmed with Cary that Espinoza had no legal authority over her or her staff. Henderson refused to reprimand Espinoza.
On November 30, 1994, a conflict resolution meeting was held at the BOCES offices. Espinoza again insulted plaintiff and, particularly, her female leadership skills. Henderson was at the meeting and did nothing to curtail Espinoza's actions. On February 17, 1995, plaintiff and Espinoza met for another mediation session. Espinoza again interrupted plaintiff and plaintiff ended the mediation because she felt she was not being permitted to express her complaints. Plaintiff does not allege any discriminatory acts by defendants after February 17, 1995. Plaintiff alleges that she was forced to resign due to seizures caused by defendants' actions.

II.
The very purpose of a summary judgment motion is to assess whether trial is necessary. White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmoving party has the burden of showing that there are issues of material fact to be determined. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552; Mares v. ConAgra Poultry Co., Inc., 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. Otteson v. U.S., 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.

*1425 III.
Plaintiff claims that defendants (1) discriminated against her on the basis of her gender in violation of Title IX and (2) violated her constitutional equal protection rights in violation of 42 U.S.C. § 1983. Defendants move for summary judgment on both claims because, they argue: (1) plaintiff cannot maintain a Title IX claim as she was neither a student nor an employee of BOCES at the time of the pertinent events; (2) plaintiff's § 1983 claim must fail because defendants were not acting "under color of state law" when the alleged discrimination took place; and (3) individual defendants Espinoza and Henderson are entitled to qualified immunity from plaintiff's § 1983 claim. For the following reasons, I will grant defendants' motion for summary judgment on all of plaintiff's claims except her § 1983 claim against BOCES.

A. Title IX

Title IX provides:
No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....
20 U.S.C. § 1681(a).
Plaintiff claims that she was "subjected to discrimination under" the BOCES program, which receives federal funds. Therefore, she argues, BOCES violated Title IX by sexually discriminating against her through Espinoza and by failing to remedy that discrimination. I disagree.
I begin my analysis with the language of the statute. See Greyhound Corp. v. Mt. Hood Stages, Inc., 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). Title IX, by its terms, protects three categories of persons  those who are (1) "excluded from participation in"; (2) "denied the benefits off"; or (3) "subjected to discrimination under" an education program receiving federal funds. Plaintiff clearly does not fit either of the first two categories as she is not a student and was not attempting to garner either participation in or the benefits of the BOCES program. Rather, plaintiff argues that she was "subjected to discrimination under" the BOCES program because Espinoza was acting in his official capacity when he allegedly harassed and discriminated against her. I conclude, however, that Title IX cannot be construed so broadly.
No court has held that a plaintiff who is neither a potential beneficiary of a federally funded education program nor an employee of such a program can maintain a Title IX action for sex discrimination. Indeed, many courts, in dicta, have limited the range of proper Title IX plaintiffs to students and program employees. See, e.g., Houston v. Mile High Adventist Academy, 846 F.Supp. 1449, 1458 (D.Colo.1994) (parents lack standing to assert Title IX claim); Davis v. Monroe County Board of Educ., 74 F.3d 1186, 1190 (11th Cir.1996) (stating that employees and students have an implied right of action under Title IX); Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 248 (2d Cir.1995) (same); Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995) (same). As plaintiff properly points out, however, this is a case of first impression. Plaintiff's circumstance is distinguishable from that of a parent asserting a claim that her child was discriminated against or harassed because plaintiff alleges harm to herself, not a third party. Neither I nor the parties have found a case directly addressing whether someone in plaintiff's position can maintain a Title IX claim. Nevertheless, I conclude that she cannot.
In North Haven Board of Education v. Bell, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982), the Court addressed the issue whether employees of federally funded education programs could assert Title IX claims for discrimination. Because Title IX does not address explicitly whether employees are proper plaintiffs, the Court relied extensively on the legislative history of the statute. In particular, the Court was guided by the statements of Senator Bayh, the sponsor of the statute: "Although the statements of one legislator made during debate may not be controlling, Senator Bayh's remarks, as those of the sponsor of the language ultimately enacted, are an authoritative guide to the *1426 statute's construction." Id. at 526-27, 102 S.Ct. at 1920 (citing FEA v. Algonquin SNG, Inc., 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976)).
In explaining the scope of Title IX and the three categories of aggrieved persons sought to be aided by the statute, Senator Bayh stated:
[W]e are dealing with three basically different types of discrimination here. We are dealing with [1] discrimination in admission to an institution, [2] discrimination of available services or studies within an institution once students are admitted, and [3] discrimination in employment within an institution, as a member of a faculty or whatever.
Id. at 526, 102 S.Ct. at 1920. The "types" of discrimination described by Senator Bayh track closely with the three categories defined explicitly in the statute as finally enacted.
There is no mention in Senator Bayh's comments or in any other legislative history pertinent to Title IX to suggest that plaintiff, who is not an employee of BOCES and is not seeking either admission to or services under the BOCES program, can maintain her claim. Rather, all of the proper plaintiffs outlined by Senator Bayh and permitted in previous cases are direct beneficiaries of the federal funds provided to the education program in question. Students benefit through the provision of services made possible by federal funds. Employees benefit by paid employment facilitated by federal funds.
Alternatively, plaintiff is not an intended beneficiary of the federal funds provided to BOCES. She is neither paid by BOCES nor a candidate to receive services from BOCES. At most, she was forced as an employee of North Conejos School District to work with BOCES. There is nothing in the statute or its legislative history to suggest, however, that such a circumstance invokes the prohibitions of Title IX. It is not enough that an employee of a federally funded education program may have harassed or discriminated against plaintiff. Title IX was not intended to sweep so broadly. Therefore, I conclude that plaintiff was not subjected to discrimination "under" the BOCES program within the meaning of Title IX, and I will grant defendants' motion for summary judgment on this claim.

B. Section 1983

Defendants argue that plaintiff cannot maintain a § 1983 claim against any defendant because even if plaintiff's allegations are true, they were not acting "under color of state law." In addition, individual defendants Espinoza and Henderson assert the defense of qualified immunity. Because I conclude that Espinoza and Henderson are entitled to the defense of qualified immunity, I will grant summary judgment on this claim as it applies to them. I will deny the motion, however, as it relates to plaintiff's § 1983 claim against BOCES.

1. "Under Color of State Law"
Section 1983 creates a cause of action against individuals who violate federal statutory or constitutional law while acting "under color of state law." 42 U.S.C. § 1983; Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir.1995). A defendant's authority over plaintiff may be actual or apparent. Id. at 493. Generally, this requires the defendant in a § 1983 action to have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1042, 85 L.Ed. 1368 (1941); West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988). "The under color of state law determination rarely depends on a single, easily identifiable fact." David v. City and County of Denver, 101 F.3d 1344, 1353 (10th Cir.1996). Rather "one must examine the nature and circumstances of the [defendant's] conduct and the relationship of that conduct to the performance of his official duties." Id. (internal quotations omitted).
Plaintiff claims that Espinoza violated her equal protection rights under the Fourteenth Amendment to the United States Constitution by sexually harassing and discriminating against her on the basis of her gender. Further, plaintiff claims that Henderson and BOCES violated her equal protection rights *1427 by not remedying or curtailing Espinoza's discriminatory actions. Defendants move for summary judgment on the narrow ground that none of the defendants possessed authority over plaintiff and, therefore, they were not acting under color of state law.
It is undisputed that plaintiff worked for North Conejos School District and that none of the defendants had the power to terminate or discipline her. It is also clear that plaintiff knew that Espinoza had no supervisory authority over her or her staff when she reprimanded Espinoza for acting as if he had such authority during the November 15, 1994, meeting. Lopez Dep. p. 406. In addition, plaintiff confirmed with Cary shortly after the November 15, 1994, meeting that Espinoza had no supervisory authority over her or her staff. Lopez Dep. p. 426. Defendants argue that these facts compel a finding that defendants did not act under color of state law. I disagree.
The Tenth Circuit recently held that in certain instances coworkers may exercise "de facto" state authority over sexual harassment victims such that they can be found to act under color of law. David, supra, 101 F.3d at 1354 (citing Poulsen v. City of N. Tonawanda, 811 F.Supp. 884, 895 (W.D.N.Y. 1993)). In David, a police officer asserted a claim of harassment under § 1983 against fellow police officers who were not her supervisors. The court refused to dismiss the claim, concluding that a § 1983 defendant need not have supervisory authority over the plaintiff. Rather, de facto state authority is enough to satisfy the "color of state law" requirement for a § 1983 claim. Id.
There is a genuine issue of fact whether Espinoza and, by implication, Henderson and BOCES possessed de facto authority over plaintiff. Plaintiff, as the principal of La Jara Elementary School, was obligated to obtain special education services for students who needed them, such as Student X. Lopez Aff. ¶¶ 3-4. The parties present conflicting evidence whether BOCES or the North Conejos School District had the final decision whether La Jara Elementary received particular special education services. C.f. Lopez Aff. ¶¶ 5-10 with Cary Aff. ¶ 6 and Henderson Aff. ¶ 6. This dispute is sufficient to create a genuine issue of fact whether defendants possessed de facto authority over plaintiff.
If defendants had the power to withhold needed services from the La Jara Elementary School, they had some authority over plaintiff because they controlled services plaintiff required for her school. In addition, defendants' alleged actions giving rise to this claim occurred during and are related directly to their performance of official duties  providing special services to school districts. Defendants' alleged harassment and discrimination against plaintiff would not have been possible but for their state-law-based authority to provide special services to Colorado schools. Accordingly, I find that genuine issues of fact exist whether defendants acted "under color of state law," and I will deny defendants' motion on this ground.

2. Qualified Immunity
Individual defendants Espinoza and Henderson move for summary judgment on their defense of qualified immunity. Espinoza and Henderson argue that even if plaintiff can maintain a § 1983 claim for sex discrimination in this context, they are entitled to immunity because they violated no "clearly established" law at the time of their alleged actions. I agree.
I analyze the defense of qualified immunity as follows:
First, the defendant must raise the defense of qualified immunity. Once the defendant has adequately raised the defense, the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations to show that the official violated the clearly established law. Then the defendant assumes the normal summary judgment burden....
Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir.1992), cert. denied, 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found *1428 the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992).
Application of § 1983 to sexual harassment and discrimination claims against persons having no supervisory power over the plaintiff was not clearly established at the time of the events giving rise to this case. All pertinent events in this case took place in 1994 and 1995. In Woodward, supra, which was decided in 1992, the Tenth Circuit discussed the possibility of permitting sexual harassment claims under § 1983 against coworkers, but the court expressly declined to decide the issue. 977 F.2d at 1401. Nor was the "clearly established weight of authority from other courts" in favor of permitting this use of § 1983 in 1994-1995. In fact, Woodward expressly discussed authority from several circuits declining to permit sexual harassment claims against coworkers under § 1983. Id. at 1400.
The Tenth Circuit did not decide this issue until December 1996. As discussed, David, supra, held that supervisory authority was not required and de facto authority is sufficient to permit a sexual harassment claim against coworkers under § 1983. 101 F.3d at 1354 (10th Cir.1996). In reaching its conclusion, the court recognized that this issue was previously left undecided in its previous cases, including Woodward. Id. at 1354. Therefore, defendants Espinoza and Henderson did not violate any "clearly established" law in 1994 and 1995, and they are entitled to summary judgment on their defense of qualified immunity.
Accordingly, it is ORDERED that:
1. Defendants' motion for summary judgment is GRANTED to the extent that plaintiff's claim for sex discrimination under Title IX is DISMISSED with prejudice and plaintiff's claim under § 1983 is DISMISSED with prejudice as to defendants Espinoza and Henderson. Defendants' motion is otherwise DENIED;
2. Defendants Espinoza and Henderson are awarded their costs.