Rebecca Goodgame Ebinger, United States District Judge
I. INTRODUCTION
Plaintiff Tom Rossley brings this suit against Defendants Drake University and Drake University Board of Trustees challenging his termination as a member of the University's Board of Trustees and contesting Drake's Title IX investigation of Rossley's son. Am. Compl., ECF No. 26. Defendants move for partial judgment on the pleadings as to Count I-alleging retaliation under Title IX-against Drake University. ECF No. 53. For the reasons set forth below, the Court determines Rossley has not pleaded he was subjected to discrimination under an education program or activity and therefore lacks statutory standing to bring a retaliation claim under Title IX. Consequently, the Court grants Defendants' motion for partial judgment on the pleadings.
II. FACTUAL & PROCEDURAL BACKGROUND
Rossley served as a member of the Drake University Board of Trustees for twenty-three years. ECF No. 26 ¶ 14. In the fall of 2015, Drake University commenced a Title IX[1] investigation into an allegation of sexual assault by Rossley's son. Id. ¶ 49. As relevant here, Rossley believed the investigation was unlawful and biased against his son due to his son's gender. See id. ¶¶ 30, 161. Rossley contacted Drake University's Dean of Students regarding his concerns. Id. ¶¶ 58, 65-69. In April 2016, Rossley wrote an email and sent a letter to Drake University's Dean of Students, the Board, and "select members of Defendant Drake's faculty and administration" expressing his concerns with the Title IX investigation of his son. Id. ¶¶ 87-95. In mid-July 2016, the Board voted to remove Rossley from the Board of Trustees. Id. ¶¶ 122, 127.
*962 In February 2017, Rossley brought this suit. Compl., ECF No. 1. In July 2017, Rossley filed an Amended Complaint. ECF No. 26. Following the Court's December 20, 2017 Order on Defendants' Partial Motion to Dismiss, the following counts of the Amended Complaint remain: Count I (retaliation under Title IX against Defendant Drake University); Count II (breach of fiduciary duties against Defendant Board); Count III (breach of Drake's policies and procedures against both Defendants); and Count V (retaliation under the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act, and the Iowa Civil Rights Act against both Defendants).See ECF No. 41 at 15-16.[2]
On February 20, 2018, Defendants filed a motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 53. Defendants request the Court dismiss Count I against Drake University. Id. ¶ 6. Defendants assert Rossley lacks statutory standing because "[a]s a non-student, Rossley cannot suffer the systemic denial of access to education programs and activities and [thus] is not within the zone of interests that Title IX is meant to protect." Id. ¶¶ 3-4. Rossley resists. ECF No. 54. Neither party requested a hearing.
III. LEGAL STANDARD
A. Defendants' Rule 12(c) Motion
Before the Court considers the substance of Defendants' motion, the Court first addresses Rossley's argument that Defendants have waived their right to bring a motion under Federal Rule of Civil Procedure Rule 12(c). Rule 12(c) provides "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.' " Poehl v. Countrywide Home Loans, Inc. , 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting Faibisch v. Univ. of Minn. , 304 F.3d 797, 803 (8th Cir. 2002) ).
Rossley contends Defendants have waived their right to bring a motion under Rule 12(c), as Defendants' Answer and affirmative defenses raise various factual disputes. ECF No. 54 at 4-6. Defendants resist, asserting affirmative defenses do not bar judgment on the pleadings in the Eighth Circuit and arguing their Rule 12(c) motion is procedurally appropriate. Defs.' Reply Supp. Mot. J. on the Pleadings 1, ECF No. 55. The Court determines Defendants did not waive their right to bring a 12(c) motion by raising affirmative defenses or filing an Answer.
In recognition of the Rule 12(c) requirement that there be "no material issue of fact" as to the parties' claims, courts have determined a defendant's answer or affirmative defenses may create a "material issue of fact" barring a judgment on the pleadings. See, e.g., Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church , 887 F.2d 228, 230 (9th Cir. 1989) ; Munt v. Minn. Dep't of Corr. , No. 16-cv-1206 (SRN/SER), 2017 WL 1232410, at *10 (D. Minn. Jan. 27, 2017), adopted as modified , No. 16-1206 (SRN/SER), 2017 WL 1180452 (D. Minn. Mar. 29, 2017) ;
*963 Lasser v. Am. Gen. Life Ins. , No. 14-cv-3326 (MJD/LIB), 2015 WL 12778004, at *3 (D. Minn. Apr. 3, 2015). However, contrary to Rossley's assertions, these decisions do not stand for the proposition that a defendant waives its right to bring a Rule 12(c) motion by raising affirmative defenses or denying factual allegations in an answer. Rather, the cases cited by Rossley involve a plaintiff's inability to move for judgment on the pleadings after a defendant has raised affirmative defenses. See Gen. Conference Corp. , 887 F.2d at 230 ; Munt , 2017 WL 1232410, at *10 ; Lasser , 2015 WL 12778004, at *3-4 ; Lake v. Aetna Life Ins. , 54 F.Supp.3d 331, 334-35 (D.N.J. 2014) ; Clark v. Transamerica Life Ins. , No. 4:09-CV-00877 GTE, 2010 WL 2771916, at *2-3 (E.D. Ark. June 18, 2010) ; see also ECF No. 54 at 4-6 (discussing these cases). Rossley has pointed to no case law to support his proposition that a defendant waives its right to bring a Rule 12(c) motion by raising affirmative defenses or denying the plaintiff's factual allegations. Cf. Gallagher v. City of Clayton , No. 4:11-CV-392 CAS, 2011 WL 6140905, at *1-2, *8 (E.D. Mo. Dec. 9, 2011) (granting defendants' judgment on the pleadings after the plaintiff failed to plausibly assert a claim alleging the city's smoking ban failed rational basis review)
Defendants are required, pursuant to Rule 8(b)(1), to raise all affirmative defenses in their answer and respond to the factual allegations in the plaintiff's complaint. See Fed. R. Civ. P. 8(b)(1) (requiring a responding party to "state in short and plain terms its defenses to each claim" and "admit or deny the allegations asserted against it by an opposing party"). This Rule would be undermined if a responding party had to choose between raising affirmative defenses and filing a motion under Rule 12(c). This is especially true as Rule 12(c) may only be brought after the pleadings are closed. See Fed. R. Civ. P. 12(c).
Finally, the Federal Rules of Civil Procedure expressly permit parties in Defendants' position to bring Rule 12(c) motions. Specifically, Defendants assert Rossley lacks statutory standing and thus cannot pursue his claim for retaliation under Title IX. ECF No. 53 ¶ 4. This is, in essence, an argument that Rossley has failed to assert a claim under which relief may be granted. See Lexmark Int'l, Inc. v. Static Control Components, Inc. , 572 U.S. 118, 134 S.Ct. 1377, 1387 & n.4, 188 L.Ed.2d 392 (2014) (considering a party's motion to dismiss for failure to state a claim and determining statutory standing is not a "jurisdictional" question, but rather a consideration of whether the plaintiff "has a cause of action under the statute"); Leyse v. Bank of Am. Nat'l Ass'n , 804 F.3d 316, 320 (3d Cir. 2015) (noting because "[s]tatutory standing goes to whether Congress has accorded a particular plaintiff the right to sue under a statute, ... '[a] dismissal for lack of statutory standing is effectively the same as dismissal for failure to state a claim' ") (second alteration in original) (quoting Baldwin v. Univ. of Pittsburgh Med. Ctr. , 636 F.3d 69, 73 (3d Cir. 2011) ); see also Grasso Enters., LLC v. Express Scripts, Inc. , 809 F.3d 1033, 1040 (8th Cir. 2016) (citing with approval Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc. , 802 F.3d 926, 928 (7th Cir. 2015) ) (discussing Pennsylvania Chiropractic which held statutory standing "is not an issue of Article III standing to seek relief in federal court"). The Federal Rules of Civil Procedure explicitly allow defendants to move for judgment on the pleadings in such circumstances. See Fed. R. Civ. P. 12(h)(2)(B) ("Failure to state a claim upon which relief can be granted ... may be raised ... by a motion under Rule 12(c)."); cf. Leyse , 804 F.3d at 320-22 (discussing Rule 12(h)(2) and determining because the defendant had filed a second motion to dismiss under Rule 12(b)(6), rather than a post-answer Rule 12(c) motion, the district court erred by considering the motion).
*964 Consequently, Defendants' motion for partial judgment on the pleadings is properly before the Court.
B. Applicable Legal Standard
When a party moves for dismissal for failure to state a claim pursuant to Rule 12(c), a court will apply the same standard it would have used had the motion been brought under Rule 12(b)(6). See Poehl , 528 F.3d at 1096 ; see also Westcott v. City of Omaha , 901 F.2d 1486, 1488 (8th Cir. 1990) ("[W]e review this 12(c) motion under the standard that governs 12(b)(6) motions."); 5C Charles A. Wright et al., Federal Practice and Procedure § 1367 (3d ed. 1998 & Supp. 2018) ("[T]he district court will apply the same standards for granting the appropriate relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under [ Rule 12(b)(6) ].").
Accordingly, in order to survive a Rule 12(c) motion in this context, Rossley's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. ; accord Kelly v. City of Omaha , 813 F.3d 1070, 1075 (8th Cir. 2016).
Although a court must draw all reasonable inferences from the facts alleged in a party's complaint, if a dispositive issue of law shows no claim exists on the face of the pleadings, a court may dismiss the claim. Neitzke v. Williams , 490 U.S. 319, 326-27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ; see also Poehl , 528 F.3d at 1096 (noting when a court reviews a motion for judgment on the pleadings, the court must "view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party"). Finally, a court need not accept a party's legal conclusions, only its factual allegations. Brown v. Medtronic, Inc. , 628 F.3d 451, 459 (8th Cir. 2010).
IV. DISCUSSION
Defendants assert Rossley lacks statutory standing to bring a retaliation claim under Title IX, as he has not alleged he was denied access to an education program or activity. ECF No. 53 ¶¶ 2-4. Rossley contends a Title IX retaliation plaintiff is not required to assert he was denied such access. ECF No. 54 at 6-8. Alternatively, Rossley argues he has sufficiently pleaded he was denied access to an education program or activity. Id. at 8.
The Court will first analyze the requirement that a plaintiff have statutory standing. The Court will then examine the scope of a plaintiff's cause of action for retaliation under Title IX. Finally, the Court will consider whether, under Title IX, Rossley has pleaded a plausible retaliation claim. For the reasons set forth below, the Court determines a Title IX retaliation plaintiff must allege facts showing he was either an employee or was otherwise excluded from participation in, denied the benefits of, or subjected to discrimination under an education program or activity. The Court finds Rossley was not an employee and has not pleaded he was excluded from participation in, denied the benefits of, or subjected to discrimination under an education program or activity. Therefore, Rossley lacks statutory standing to bring a retaliation claim under Title IX and the Court grants Defendants' motion for partial judgment on the pleadings.
*965 A. Statutory Standing Requirement
In order to bring a claim under a particular statute, a plaintiff must have statutory standing, that is the plaintiff's cause of action must fall within the "zone of interests" protected by that statute. Lexmark , 134 S.Ct. at 1387-88 ; accord Grasso Enters. , 809 F.3d at 1040. This requirement is distinct from the issue of whether the plaintiff has constitutional standing under Article III and instead requires courts to consider whether the plaintiff "has a cause of action under the statute" in question. Lexmark , 134 S.Ct. at 1387 ; see also Grasso , 809 F.3d at 1040 ; Leyse , 804 F.3d at 320. Additionally, statutory standing "applies to all statutorily created causes of action; [ ] is a 'requirement of general application'; and [ ] Congress is presumed to 'legislat[e] against the background of' the zone-of-interests limitation." Lexmark , 134 S.Ct. at 1388 (third alteration in original) (quoting Bennett v. Spear , 520 U.S. 154, 163, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) ). "[T]he breadth of the zone of interests varies according to the provisions of law at issue." Id. at 1389 (quoting Bennett , 520 U.S. at 163, 117 S.Ct. 1154 ).
The Court now considers the scope of Title IX's zone of interests for retaliation claims.
B. Statutory Standing Under Title IX
Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The United States Supreme Court has interpreted Title IX to provide a private right of action for students complaining of teacher and peer sexual harassment. See Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ. , 526 U.S. 629, 643, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (finding a plaintiff could sue for student-on-student sexual harassment); Gebser v. Lago Vista Indep. Sch. Dist. , 524 U.S. 274, 290-91, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (recognizing a claim of deliberate indifference for a teacher's sexual harassment of a student). An individual employed by a federally-funded institution may also bring a claim under Title IX. N. Haven Bd. of Educ. v. Bell , 456 U.S. 512, 520-21, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) (holding employees may bring a discrimination claim under Title IX when they "directly participate in federal programs," "directly benefit from federal grants, loans, or contracts," or are "subject to discrimination under" the funded education program).
Parents are permitted to file discrimination and harassment claims on behalf of their minor children or their deceased adult children. See Lopez v. Regents of Univ. of Cal. , 5 F.Supp.3d 1106, 1114 (N.D. Cal. 2013) (finding the parents of a deceased adult child had standing to bring a Title IX suit and noting "parents do have standing to assert Title IX claims on behalf of a student"); Dipippa v. Union Sch. Dist. , 819 F.Supp.2d 435, 446 (W.D. Pa. 2011) ("[P]arents of a student whose rights were violated ... do have standing to assert claims on the student's behalf."). However, parents lack standing to bring their own Title IX sex discrimination claims because they have not been subjected to discrimination under an education program or activity. See, e.g., Lopez , 5 F.Supp.3d at 1114 ("[I]n general, non-students such as parents do not have a personal claim under Title IX."); Seiwert v. Spencer-Owen Cmty. Sch. Corp. , 497 F.Supp.2d 942, 954 (S.D. Ind. 2007) ("Title IX only protects against actions that interfere with educational opportunities or activities. Because there are no *966 educational opportunities or activities that the parents are excluded from, they have no claim."); Burrow ex rel. Burrow v. Postville Cmty. Sch. Dist. , 929 F.Supp. 1193, 1199 (N.D. Iowa 1996) (granting summary judgment against the parents of a child because the child was not a minor and neither of her "[p]arents were students at [the high school] nor were they personally excluded from, denied the benefits of or subjected to discrimination under an educational program or activity within the meaning of Title IX").
In Jackson v. Birmingham Board of Education , the Supreme Court determined Title IX also protects individuals who suffer retaliation after reporting instances of sex discrimination. 544 U.S. 167, 173-74, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005). In Jackson , the Court considered a retaliation claim brought by a high school basketball coach who was removed from his position after reporting sex discrimination in the school's athletic program. Id. at 171-72, 125 S.Ct. 1497. In determining the plaintiff could bring a claim against the school board, the Court noted, "[r]etaliation ... is a form of 'discrimination' because the complainant is being subjected to differential treatment. Moreover, retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination." Id. at 173-74, 125 S.Ct. 1497 (citations omitted). The Court also explained "[Title IX] is broadly worded; it does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint." Id. at 179, 125 S.Ct. 1497. Rather, in part because "[r]eporting incidents of discrimination is integral to Title IX enforcement," id. at 180, 125 S.Ct. 1497, "[w]here the retaliation occurs because the complainant speaks out about sex discrimination, the 'on the basis of sex' requirement is satisfied," id. at 179, 125 S.Ct. 1497.
Rossley asserts the language of Jackson , as well as subsequent case law, indicate any Title IX advocate has a cause of action, regardless of whether they are an employee, a student, or an individual who has been subjected to discrimination under an education program or activity. ECF No. 54 at 8-12. This is a novel argument. For the reasons set forth below, the Court determines in order to assert a claim of retaliation under Title IX, an individual must plead facts showing the alleged retaliatory conduct subjected him to discrimination under an education program or activity. Neither Jackson nor the plain language of Title IX can be extended to provide statutory standing to a non-student, non-employee who reported alleged sex discrimination against his adult son.
First, while the Court in Jackson indisputably recognized a private cause of action for retaliation under Title IX, the case involved a school employee clearly within the zone of interests protected by Title IX. See Jackson , 544 U.S. at 171-72, 125 S.Ct. 1497 ; Bell , 456 U.S. at 520, 102 S.Ct. 1912 (determining employees can bring claims for sex discrimination under Title IX). Any retaliation the employee experienced pertained to his position under an education program or activity, and thus was the type of action prohibited by the plain language of Title IX. Additionally, the Court provided examples of retaliation by focusing on conduct against either employees or students-that is, individuals who would be subjected to retaliation through an education program or activity. See Jackson , 544 U.S. at 180, 125 S.Ct. 1497 (reasoning if a teacher were unable to sue for retaliation under Title IX, she would be less likely to report a principal for sexual harassment); id. at 179 n.3, 125 S.Ct. 1497 (providing as an example of retaliation a situation where a school removes both a female and male student from the honor society after both report sex discrimination against the female basketball team). Thus, *967 while Jackson expanded the range of prohibited conduct under Title IX, it did so for individuals who would suffer retaliation under an education program or activity. Jackson does not stand for the broader proposition that any individual who experiences retaliatory acts outside an education program or activity may bring a Title IX retaliation claim.
Second, when the holding in Jackson is considered together with the plain language of Title IX, it is apparent the alleged retaliation must still fall within the scope of 20 U.S.C. § 1681(a). The Jackson Court made clear that retaliation is discrimination under Title IX. 544 U.S. at 173-74, 125 S.Ct. 1497. Therefore, in order to fall within the zone of interests of Title IX, a plaintiff must be "subjected to discrimination under"-here, subjected to retaliation under-"any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) ; see also Prey v. Kruse , No. 2:08-cv-287, 2009 WL 10679036, at *1-2 (S.D. Ohio June 9, 2009) (determining "[t]he Jackson case does not confer standing beyond potential beneficiaries or employees of a federally funded education program" and holding a non-student, non-employee plaintiff could not bring a Title IX retaliation claim after a teacher allegedly harassed the plaintiff's ex-partner and the college "assisted and supported defendants by failing to maintain [the plaintiff's] confidentiality with respect to his complaints").
Third, the Supreme Court has consistently interpreted Title IX causes of action with reference to the specific, education-related language of the statute, thus affirming the requirement that plaintiffs be, in some way, excluded from participation in, denied the benefits of, or subjected to discrimination under an education program or activity. For instance, in Bell , the Court defined an employee's cause of action under Title IX by closely following the language of 20 U.S.C. § 1681(a) : "[E]mployees, like other 'persons,' may not be 'excluded from participation in,' 'denied the benefits of,' or 'subjected to discrimination under' education programs receiving federal financial support." Bell 456 U.S. at 520, 102 S.Ct. 1912 (quoting 20 U.S.C. § 1681(a) ). Similarly, in Davis , the Court recognized student-on-student harassment under Title IX, but only in situations "where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." Davis , 526 U.S. at 652, 119 S.Ct. 1661 ; see also K.T. v. Culver-Stockton Coll. , No. 4:16-CV-165 CAS, 2016 WL 4243965, at *7 (E.D. Mo. Aug. 11, 2016), aff'd , 865 F.3d 1054, 1057 (8th Cir. 2017) (determining even if a non-student was able to sue for student-on-student sexual harassment, she would lack standing because she "failed to allege facts to show that she was excluded from participation, denied the benefits of, or subjected to discrimination under any education program or activity offered by the College").[3] Although these cases were based on claims of sex discrimination rather than retaliation, they underscore that Title IX is meant to only apply to those actions which impact an individual's treatment under an education program or activity.
Finally, the decisions Rossley cites to are distinguishable and do not support his argument that an advocate may bring a retaliation claim regardless of his treatment under an education program or activity.[4] Rossley first cites to Jackson.
*968 ECF No. 54 at 8-9. As explained above, Jackson does not stand for the broad proposition that any individual who experiences retaliatory acts outside an education program or activity may bring a Title IX retaliation claim. Rossley also points to Sullivan v. Little Hunting Park, Inc. , in which the Court determined a white property owner could bring a retaliation claim under 42 U.S.C. § 1982 when he was removed from a housing corporation after attempting to lease his house and stake in the corporation to an African American. Id. at 9 (citing 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) ). Like the plaintiff in Jackson , the Sullivan property owner suffered retaliatory acts as defined and prohibited under § 1982, specifically, conduct which barred him from "convey[ing] real and personal property." 42 U.S.C. § 1982 ; Sullivan , 396 U.S. at 235, 90 S.Ct. 400 (noting after the plaintiff complained about the corporation's discriminatory acts, he "was expelled [and] the board tender[ed] him cash for his two shares"). Given this limitation, Rossley's reliance on Gomez-Perez v. Potter , in which the Supreme Court recognized retaliation claims under the ADEA, is similarly unpersuasive. ECF No. 54 at 9 (citing 553 U.S. 474, 480-81, 128 S.Ct. 1931, 170 L.Ed.2d 887 (2008) ). While the Gomez-Perez Court noted its holding in Jackson "flowed naturally from Sullivan ," as described above, neither Jackson nor Sullivan suggests retaliation claims may extend beyond the types of conduct prohibited by Title IX or § 1982, respectively. 553 U.S. at 481, 128 S.Ct. 1931. Furthermore, in concluding the ADEA permitted retaliation claims on the same theory as Jackson , the Gomez-Perez court primarily relied on Jackson 's holding that Title IX retaliation was "on the basis of sex" because such retaliation flowed from a complaint about gender discrimination; the Gomez-Perez court was not considering the type of retaliatory conduct prohibited by Title IX. See id. at 480-82, 128 S.Ct. 1931.
Rossley also identifies a decision by the United States District Court for the District of New Jersey, D.V. v. Pennsauken Sch. Dist. , in which the court determined the uncle of a student could bring his own retaliation claim under Title IX for allegedly adverse actions directed at the uncle. No. 12-7646 (JEI/JS), 2013 WL 4039022, at *11 (D.N.J. Aug. 7, 2013) ; see ECF No. 54 at 9. D.V. is neither binding nor persuasive. To the extent D.V. broadly holds a non-employee, non-student can bring a Title IX retaliation claim, its reasoning cannot be extended to support a finding that an individual in Rossley's position may assert a claim for retaliation under Title IX. First, unlike Rossley, the relevant plaintiff in D.V. suffered alleged retaliation in his employment as a teacher in New Jersey. D.V. , 2013 WL 4039022, at *1-2 (explaining that in retaliation for complaining that his nephew had been denied disability accommodations, an individual made an unsubstantiated claim of sexual abuse against the plaintiff, thus requiring the plaintiff to report this issue to all future school employers). These retaliatory actions were thus more similar to the type of employment-based retaliation previously recognized under Title IX than the claims presented to this Court. See Jackson , 544 U.S. at 171-72, 125 S.Ct. 1497.
Furthermore, the plaintiff in D.V. reported alleged discrimination against a minor child, rather than against an adult in *969 college. D.V. , 2013 WL 4039022, at *1. Both the purpose of Title IX and the general authority provided to parents of minor children in the educational context make this distinction essential. Unlike parents of adult children, parents of minor children are granted statutory rights protecting their involvement in their children's education. For instance, under the Family Educational Rights and Privacy Act (FERPA), parents may review the educational records of their minor children and schools are largely prohibited from sharing that information without the parents' consent. See generally 20 U.S.C. § 1232g. However, when the student reaches the age of majority, "the permission or consent required of and the rights accorded to the parents of the student shall thereafter only be required of and accorded to the student." 20 U.S.C. § 1232g(d). Similarly, under the Individuals with Disabilities Education Act (IDEA), individuals who advocate for the needs of disabled children under the IDEA are granted particular rights and access to a school's campus and its officials. See 20 U.S.C. § 1415. Parents of adult children, however, are not provided such protections.
This distinction has been read into the protections available under Title IX. "Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide individualized citizens effective protection against those practices.' " Gebser , 524 U.S. at 286, 118 S.Ct. 1989 (alteration in original) (quoting Cannon v. Univ. of Chi. , 441 U.S. 677, 704, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ). In recognition of the need to provide "effective protection against" sex discrimination in education, as well as the fact that minors are unable to advocate for themselves, parents may bring claims under Title IX when their minor or deceased child suffers discrimination. See Lopez , 5 F.Supp.3d at 1114-15 (determining parents of a deceased adult student could bring a retaliation claim on her behalf and noting "in general, ... parents do have standing to assert a Title IX claim on behalf of a student"); Seiwert , 497 F.Supp.2d at 954 ; Burrow , 929 F.Supp. at 1199 (granting summary judgment to defendants based in part on the fact that the student had reached the age of majority and the parents no longer had standing).
Similarly, courts which have recognized a parent's own retaliation claim have done so when the parent reported alleged sex discrimination against their minor child. See, e.g., Doe v. USD No. 237 Smith Ctr. Sch. Dist. , No. 16-cv-2801-JWL-TJJ, 2017 WL 3839416, at *8-9 (D. Kan. Sept. 1, 2017) (permitting the mother of a minor child to amend her complaint to bring her own retaliation claim alleging she was barred from school activities and called disparaging names); Bigge v. Dist. Sch. Bd. of Citrus Cty. , No. 5:13-cv-49-Oc-10PRL, 2015 WL 1138472, at *10-11 (M.D. Fla. Mar. 13, 2015) (assuming parents had standing to bring their own retaliation claims when they were allegedly subjected to retaliation for reporting sex discrimination against their minor children); T.L. ex rel. Lowry v. Sherwood Charter Sch. , 68 F.Supp.3d 1295, 1312 (D. Or. 2014) (determining a parent who was barred from campus after reporting alleged sex discrimination against his minor child could bring a Title IX retaliation claim, although the claim ultimately failed because the defendant did not receive federal funds). Such findings are consistent with one of the purposes of Title IX the Supreme Court identified in Jackson , namely, that "teachers and coaches such as Jackson are often in the best position to vindicate the rights of their students because they are better able to identify discrimination and bring it to the attention of administrators." See *970 Jackson , 544 U.S. at 181, 125 S.Ct. 1497. Because of parents' statutorily recognized access to, and control over, their children's education, parents of minor children are also more likely to identify and advocate against possible discrimination involving their children.
Unlike the parties discussed above, Rossley's son suffered alleged sex discrimination as an adult student, and thus was capable of advocating for himself under Title IX when the discrimination occurred. Furthermore, unlike a parent of a minor child, Rossley was not a statutorily recognized advocate for his son and had limited access to, or control over, his son's educational experience or records. See 20 U.S.C. § 1232g(b)(1) ; id. § 1232g(b)(6)(B) (detailing the limited instances in which a federally-funded educational institution may release an adult student's education records without consent from the student). Thus, his ability to "identify discrimination and bring it to the attention of administrators" was minimal and would not have furthered Title IX enforcement. See Jackson , 544 U.S. at 181, 125 S.Ct. 1497. While Rossley could certainly discuss his concerns with Drake University, Title IX was not envisioned to protect his actions. Neither Jackson nor the cases cited above suggest otherwise.
For all the reasons previously stated, the Court determines in order for a non-employee, non-student's retaliation claim to fall within Title IX's zone of interest, the retaliatory actions must have caused the plaintiff to be "excluded from participation in, [ ] denied the benefits of, or [ ] subjected to discrimination under any education program or activity" offered by a federally-funded institution. 20 U.S.C. § 1681(a). The Court now considers whether, given this requirement, Rossley's retaliation claim survives Defendants' motion for partial judgment on the pleadings.
C. Rossley's Title IX Claim
Rossley asserts he was subjected to discrimination under an education program or activity because he was "not permitted to partake in his son's Title IX process; was restricted from communicating with persons both on and off campus at Defendant Drake [University]; and was unlawfully denied access to the Defendant Board." ECF No. 54 at 12. Even taken as true, Rossley has not plausibly alleged facts showing Drake University's actions subjected him to discrimination under any education program or activity recognized under Title IX.
Pursuant to Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). As defined by 20 U.S.C. § 1687, "program or activity" and "program" include "all of the operations of" various institutions, including colleges and universities. However, courts interpreting Title IX have relied on the Code of Federal Regulations as well as Title IX's legislative history to limit the term "program of activity" to the employment or educational context. See Roubideaux v. N.D. Dep't of Corr. & Rehab. , 570 F.3d 966, 977 (8th Cir. 2009) (looking to the Code of Federal Regulations to determine whether a prison industries program was an "education program or activity" under Title IX).
The regulations promulgated under Title IX explain discrimination "under any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient which receives Federal financial assistance" is prohibited. 45 C.F.R. § 86.31. The regulations subsequently lists various examples of "education program[s] or activit[ies],"
*971 including: housing ( 45 C.F.R. § 86.32 ); facilities ( 45 C.F.R. § 86.33 ); courses ( 45 C.F.R § 86.34 ); counseling, guidance, or admission ( 45 C.F.R. § 86.36 ); financial assistance to students ( 45 C.F.R. § 86.37 ); employment assistance to students ( 45 C.F.R. § 86.38 ); and health and insurance benefits to students and employees ( 45 C.F.R. § 86.39 ). Thus, as detailed by the Code of Federal Regulations, Title's IX's prohibition on discrimination applies to those programs which relate to either educational opportunities for students or employment benefits and programs intended for faculty and staff.
This interpretation is consistent with the Supreme Court's analysis of Title IX's legislative history in Bell , in which the Court determined employees were permitted to bring their own claims of sex discrimination. Bell , 456 U.S. at 524-30, 102 S.Ct. 1912. Because Title IX did not explicitly address whether employees were proper plaintiffs, the Court relied heavily on the statute's legislative history. Id. The Court noted the original sponsor of the amendment, Senator Birch Bayh, intended for Title IX to cover issues relating to both education and faculty employment. See id. at 524, 102 S.Ct. 1912 ("[T]he heart of this amendment is a provision banning sex discrimination in educational programs receiving Federal funds. The amendment would cover such crucial aspects as admissions procedures, scholarships, and faculty employment." (alteration in original) (quoting 118 Cong. Rec. 5803 (1972) ) ). In determining Title IX was intended to cover employees as well as students, the Court explained "Senator Bayh's remarks, as those of the sponsor of the language ultimately enacted, are an authoritative guide to the statute's construction." Id. at 526-27, 102 S.Ct. 1912 ; see also Lopez v. San Luis Valley, Bd. of Coop. Educ. Servs. , 977 F.Supp. 1422, 1426 (D. Colo. 1997) (considering Senator Bayh's comments and determining a non-student, non-employee did not have standing to bring a Title IX suit). Thus, as the Supreme Court recognized in Bell , Title IX's prohibition on sex discrimination was originally envisioned to apply only to actions which impacted access to educational or employment benefits.
Finally, courts interpreting Title IX have held access to education and employment benefits underlie Title IX's "program or activity" language. In Roubideaux v. North Dakota Department of Corrections and Rehabilitation , the Eighth Circuit examined whether a "prison industries" program, which "provide[d] inmates with paying jobs [and] enable[ed] them to make purchases, pay restitution orders, or support their families" constituted an education "program or activity." 570 F.3d at 977. Noting "[t]he express language of Title IX prohibits discrimination in 'any education program' that receives federal funds," the court determined the industries program was not subject to Title IX. Id. at 977-78 (quoting 20 U.S.C. § 1681(a) ). Specifically, the Court held the educational benefits of the program were "incidental to," rather than "the primary focus of the prison industries operation." Id. at 977. In comparison, the prison's "[v]ocational education" program was "expressly within the scope of Title IX." Id. at 978.
Similarly, in Doe v. Mercy Catholic Medical Center , the United States Court of Appeals for the Third Circuit considered a case brought by a medical resident who had been terminated from a private hospital. 850 F.3d 545, 550 (3d Cir. 2017). In determining whether the hospital was a "program or activity" under Title IX, the court noted per 20 U.S.C. § 1687, Congress had "left 'education' undefined and gave no guidance to reconcile § 1687's broad phrase 'program or activity' with § 1681(a)'s ostensibly narrower language." Id. at 554. To merge the two descriptions, *972 the court concluded "a 'program or activity' under § 1687 is an 'education program or activity' under § 1681(a) if it has 'features such that one could reasonably consider its mission to be, at least in part, educational.' " Id. at 555 (quoting O'Connor v. Davis , 126 F.3d 112, 117 (2d Cir. 1997) ). Noting Title IX did not exclusively apply to "educational institutions," such as schools, the court detailed various factors to use when determining whether a particular "program or activity" was an "education program or activity":
(A) a program is incrementally structured through a particular course of study or training, whether full- or part-time; (B) a program allows participants to earn a degree or diploma, qualify for a certification or certification examination, or pursue a specific occupation or trade beyond mere on-the-job training; (C) a program provides instructors, examinations, an evaluation process or grades, or accepts tuition; or (D) the entities offering, accrediting, or otherwise regulating a program hold it out as educational in nature.
Id. at 556. Because the residency program required the plaintiff to train under faculty members and physicians, attend lectures, and participate in a physics class on a university campus, the Third Circuit concluded the program was covered by Title IX. Id. at 556-58.
Using the standards discussed above, the Court determines Rossley has failed to plausibly state a claim that he was "excluded from participation in, [ ] denied the benefits of, or [ ] subjected to discrimination under any education program or activity" offered by Drake University. 20 U.S.C. § 1681(a).
First, the Court determines, consistent with its December 20, 2017 Order, Rossley is not an "employee" of either Drake University or the Board of Trustees. See ECF No. 41 at 5-8.[5] Consequently, Rossley has failed to plausibly state a claim he was subjected to discrimination under any employment benefits or programs under Title IX. Cf. Lopez , 977 F.Supp. at 1426 (determining the plaintiff, a non-student and non-employee, lacked standing to bring a Title IX claim and noting "[e]mployees benefit by paid employment facilitated by federal funds").
Second, Rossley has failed to plead facts which, taken as true, plausibly assert a claim Drake University denied him access to any education programs or activities as a non-employee. Rossley's claims primarily focus on three instances of alleged retaliation: 1) the Board's vote to remove Rossley from his position as Trustee; 2) the Board's attempt to silence Rossley regarding Rossley's concerns; and 3) Defendants' refusal to permit Rossley to attend his son's Title IX hearing. See ECF No. 54 at 11-12; ECF No. 26 ¶¶ 77, 100, 108-09, 122. The Court considers these claims in turn.
Denying Rossley access to the Board, including removing him from his position as Trustee, does not plausibly state a claim he was subjected to discrimination under an education program or activity. The Board does not provide any educational benefits. Rather, it is an organization, separate from Drake University, which does *973 not receive federal funds. See ECF No. 35 at 3-4. Additionally, based on the allegations in Rossley's Amended Complaint, the Board's activities do not include any of the hallmarks of an education program or activity: it does not permit individuals participating in the Board to earn a degree and it does not accept tuition, offer accreditation, or provide an "incrementally structured" course of study to the Trustees. See Mercy Catholic Med. Ctr. , 850 F.3d at 556 ; see also 45 C.F.R. § 86.31 (explaining education programs or activities include "any academic, extracurricular, research, [or] occupational training"). Even if the Board did provide education programs or activities to students, Rossley has not plausibly alleged he, as a Trustee, was denied access to or participation in those programs or activities. Thus, even assuming Rossley was denied access to the Board and ultimately removed from his position as a Trustee, he was not subjected to discrimination "under any education program or activity."
Rossley also asserts members of the Board told him "he had to 'stop this (meaning his complaints) immediately' and instructed that he needed to stop sending emails and talking to people, on the Defendant Board and off, about what Defendants had done to his disabled son." ECF No. 26 ¶ 100. Even assuming the Board prohibited Rossley from discussing his concerns with members of the Drake University community, Rossley has not alleged how such an action deprived him, a non-student and non-employee, of any specific education program or activity offered by Drake University. This is particularly true as Rossley describes the Board's actions primarily as an attempt to limit his position on the Board. See id. ¶ 101 (explaining after the Board members approached Rossley, he "agreed in an email not to publicly speak about the Title IX Investigation or Title IX Hearing again. Specifically, Plaintiff stated he was 'disassociating' himself so that he could remain on the Defendant Board in good standing"). As described above, denying Rossley access to the Board does not constitute a denial of an education program or activity under Title IX.
Finally, Rossley asserts Defendants barred him from attending his son's Title IX hearing and that "when Mr. and Mrs. Rossley attempted to attend the Title IX Hearing, Defendants afforded them fewer accommodations while simultaneously offering comfort rooms for the female complainant's family." ECF No. 26 ¶ 77. Rossley provides no authority to support a finding that his participation in another person's Title IX hearing constitutes an education program or activity to him. This is particularly true given the subject of the Title IX hearing was an adult and Rossley would have been prohibited from actively participating in the hearing had he attended. See id. ¶¶ 31, 39 (explaining, under Drake University's Student Code of Conduct, a "personal representative is to provide counsel and advice" and that even when a personal representative is an attorney, the attorney "is not allowed to speak on behalf of or for their client").
Consequently, Rossley has failed to state a claim showing he was "excluded from participation in, [ ] denied the benefits of, or [ ] subjected to discrimination under any education program or activity" offered by Defendants. 20 U.S.C. § 1681(a). Because Rossley has not alleged he was subjected to discrimination under any program or activity, he lacks statutory standing to bring a retaliation claim under Title IX. The Court therefore grants Defendants' Motion for Partial Judgment on the Pleadings.
V. CONCLUSION
The Court grants Defendants' Motion for Partial Judgment on the Pleadings.
*974 ECF No. 53. Rossley is not employed by Drake University and he has not sufficiently pleaded he was excluded from participation in, denied the benefits of, or subjected to discrimination under any education program or activity. He thus cannot bring a retaliation claim under Title IX.
IT IS SO ORDERED that Defendants' Motion for Partial Judgment on the Pleadings, ECF No. 53, is GRANTED .

Title IX provides "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

In its December 2017 Order, the Court determined Rossley was not an employee and thus dismissed the portion of Count V alleging employment discrimination under Title I of the ADA, the Rehabilitation Act, and/or the Iowa Civil Rights Act. ECF No. 41 at 15. However, the Court denied Defendants' motion to dismiss the portion of Count V alleging retaliation under Title III of the ADA, the Rehabilitation Act, and/or the Iowa Civil Rights Act. Id. at 15-16.

The Eighth Circuit affirmed the District Court's order while "[a]ssuming arguendo" the plaintiff was permitted to assert a Title IX claim. K.T. v. Culver-Stockton Coll. , 865 F.3d 1054, 1057 (8th Cir. 2017).

Rossley also asserts he is not required to make this showing because, to make a prima facie case for Title IX retaliation, a plaintiff need not plead he was subjected to discrimination under an education program or activity. ECF No. 54 at 9-11. However, the elements of a prima facie case do not supplant the requirement that plaintiffs have statutory standing to bring a claim under Title IX. See Lexmark , 134 S.Ct. at 1388.

The Court's December 2017 Order examined whether Rossley was an "employee" under the Americans with Disabilities Act, not Title IX. Both statutes use the same test for determining employment status. See Lerohl v. Friends of Minn. Sinfonia , 322 F.3d 486, 489 (8th Cir. 2003) (applying the same employment test under the ADA and Title VII); Mercy Catholic Med. Ctr. , 850 F.3d at 559-60 (utilizing Title VII case law to determine whether a medical resident is an "employee" under Title IX). Rossley does not argue for a different standard. Consequently, the Court's previous ruling regarding Rossley's employment status is applicable to both his claim under the ADA and his claim under Title IX.